UNITED STATES v. LEIGH & BUTLER (Nos. 1672 AND 1674).[1]

1. CONSTRUCTION—PARAGRAPH 165, TARIFF ACT OF 1913.

Paragraph 165, tariff act of 1913, though providing for machine tools, does not provide for parts of them. Norma Co. v. United States (6 Ct. Cust. Appls., 89; T. D. 35338.)

2. ATTACHMENTS FOR CARDING MACHINES TO GRIND THE TEETH OF THE CARD CLOTHING, HOW DUTIABLE.

An attachment called "Dronsfield's patent traverse wheel grinder," designed to fit on a carding machine by means of bearings provided for it on the carding machine and to sharpen the teeth of the card clothing of the carding machine by the incidental use of the power which operates the carding machine, is not a machine, but a part of one. It is not dutiable as a machine tool under paragraph 165, tariff act of 1913, but as a manufacture of metal not specially provided for under paragraph 167.

[1] Reported in T. D., 36512 (30 Treas. Dec., 1122).

United States Court of Customs Appeals, June 5, 1916.

APPEAL from Board of United States General Appraisers, Abstracts 38981 and 39308.

[Reversed.]

*Bert Hanson*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Albert H. Washburn* and *George J. Puckhafer* of counsel) for appellees.

[Oral argument May 16, 1916, by Mr. Hanson and Mr. Washburn.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case is called "Dronsfield's patent traverse wheel grinder" and was imported under the tariff act of 1913.

The collector classified the grinder as a manufacture of metal not specially provided for and accordingly assessed duty thereon at the rate of 20 per cent ad valorem under paragraph 167 of the act.

The importers protested against the assessment, claiming duty upon the article at the rate of 15 per cent ad valorem as a "machine tool" under paragraph 165.

The protest was sustained upon evidence by the Board of General Appraisers, from which decision the Government now appeals.

The following is a copy of the competing paragraphs just cited:

165. All steam engines, steam locomotives, printing presses, and machine tools, 15 per centum ad valorem; embroidering machines, and lace-making machines, including machines for making lace curtains, nets, or nettings, 25 per centum ad valorem; machine tools as used in this paragraph shall be held to mean any machine operated by other than hand power which employs a tool for working on metal.

167. Articles or wares not specially provided for in this section; if composed wholly or in part of platinum, gold, or silver, and articles or wares plated with gold or silver, and whether partly or wholly manufactured, 50 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

It will be seen at once that the sole question in the case is whether the metal manufacture at bar is a "machine tool." If it be entitled to that name it should, of course, be assessed under the *eo nomine* provision for machine tools in paragraph 165, *supra*. On the other hand, if the article be not a machine tool it should plainly be assessed as a manufacture of metal not specially provided for under paragraph 167, *supra*.

An illustration of the article in question is shown in the catalogue of the manufacturers, which is filed as Exhibit 1 of the record, and a very full description thereof is given by the witnesses. The grinder has the appearance of a metal roller about 3½ inches in diameter and 5 or 6 feet in length, with an emery wheel attached to it. It is used as an instrument for sharpening the card clothing of card-

ing machines. This so-called card clothing consists of strips of leather fastened upon the metal cylinders of a carding machine with rows of upright wire teeth upon them. When the cylinders rotate the wire teeth "card" the fiber which is fed to them. The teeth must be sharpened at intervals in order to be kept efficient, and the article now in question is designed to perform that function.

Upon a closer examination the article is found to consist first of a steel shaft having a double worm thread cut lengthwise upon it. Over this shaft is fitted a steel tube upon which is mounted the traverse emery wheel already mentioned. When in use the article is placed in bearings which are specially prepared for it upon a carding machine, and is rotated in connection with the machine by means of a belt connected either directly or indirectly with the pulleys which furnish power to the carding machine itself. When the grinder rotates the emery wheel is automatically moved backward and forward lengthwise along the tube by means of a dog which travels in the thread above mentioned. The emery wheel is thus brought into reciprocal contact with the wire teeth of the card clothing and sharpens them.

It appears from the testimony that in the construction of carding machines the card clothing is permanently attached to the cylinder which carries it. These cylinders are generally very heavy, weighing sometimes from 1,500 to 1,900 pounds, and it would be very difficult to remove them from the machines without damaging the cloth. The usefulness of the present article is therefore apparent, since it may be attached directly to a carding machine and be rotated reciprocally with the cylinders thereof. This requires of course that the carding machines be constructed with suitable bearings for the operation of the grinders. Such a grinder is removable, and may be transferred from one carding machine to another, thus serving a number of machines when similarly constructed.

Grinders substantially similar to these are also used by manufacturers of card clothing for sharpening the wire teeth thereof upon carding cylinders before they are placed in position in carding machines. For this use the grinders are mounted upon independent frames, whereas, as already stated, when the grinders are used for sharpening the card clothing upon cylinders already assembled in carding machines they have no separate or independent frames, but rest simply upon bearings which are prepared upon the frames of the carding machines themselves.

As has been stated, the sole question in the present case is whether the article above described is a "machine tool" within the meaning of paragraph 165, above copied. That paragraph contains within itself a legislative definition of the term in question, namely, that machine tools as intended by the paragraph shall be held to mean

"any machine operated by other than hand power which employs a tool for working on metal."

The importers contend that the present article comes within the terms of the foregoing definition, claiming, first, that it is a machine; second, that it is operated by other than hand power; and, third, that it employs a tool for working on metal. The Government, however, contends that the article as imported is not a machine, but at best only part of a machine, and therefore that it does not respond to the first requirement of the statutory definition. It will be noted that paragraph 165, *supra*, makes no provision for "parts" of machine tools. Norma Co. *v.* United States (6 Ct. Cust. Appls., 89; T. D. 35338). In support of its contention the Government claims that the imported article can not be operated or put to use without a frame or other suitable support, and therefore that it does not become an actual machine until it is assembled together with its necessary supports. The Government concedes for the purposes of this case that if the article in question were complete with its frame and ready to be put into operation by the application of proper power it would be classifiable under the provision for machine tools. The present question, therefore, reduces itself to this: Is the article at bar a machine or only part of a machine? For concededly it can not be a machine tool under the definition contained in the governing paragraph unless, first, it be itself a machine. This aspect of the case is very fully presented by the concurring opinion of my brother Barber.

In coming to answer this question we must observe that the present article plainly can not be put into operation as a sharpening machine by the application of power to it until it shall first be assembled with some other article or articles. It must certainly have a frame to support it and suitable bearings within which to rotate. If the grinder were intended for use in an independent machine for sharpening card clothing outside of carding machines it would of course be necessary after importation to provide it with a separate frame. In such case neither the grinder nor the frame, if taken alone, would constitute a complete machine. Each article would constitute but part of a machine.

On the other hand, when a grinder is designed to be mounted upon a carding machine it requires, of course, no separate or independent frame; nevertheless the frame of the carding machine with its specially prepared bearings becomes virtually the frame of the grinder also. It should be noted that the bearings which are prepared for the grinder upon the frame of a carding machine serve no purpose in relation to the carding processes of the machine, but are designed exclusively as a support for the grinder.

It thus appears that the present article if taken alone is incapable of having power applied to it, and is incapable of performing its function, and that before it can be put into operation by the application of power it must first have other essential parts added to it, not simply for the purpose of bringing it into contact with the material upon which it may operate, but for the purpose of furnishing it with the necessary frame and bearings without which it can not operate at all.

Whatever, therefore, may be the dictionary definitions of the word "machine" when taken at large, it is evident in the present case that the actual work which is to be accomplished by means of the imported grinder can not be performed by it alone, but must be performed by means of this article when assembled together with other articles, all of which are equally necessary parts of a distinct entirety. This entirety is the machine in contemplation, and the present grinder is but a part of it. In this particular, therefore, the article in question fails to respond to the legislative definition of a machine tool, since it does not itself possess the character of a machine.

The decision of the board sustaining the importers' protest is therefore *reversed*.

––––––

### CONCURRING OPINION.

BARBER, Judge:

I concur in the foregoing opinion of my brother Martin and think that in addition thereto what follows is worthy of mention.

The term "machine tools" first appeared in paragraph 197 of the act of 1909, and was not in that act defined. Its meaning was first passed upon by this court in a carefully considered opinion in Myers v. United States (1 Ct. Cust. Appls., 226; T. D. 31260). The subject was reviewed in Sears v. United States (2 *Id.*, 329; T. D. 32055), and it was held there that a machine tool connoted the application of power other than that of the operator. In United States v. Georgia Pulp & Paper Manufacturing Co. (3 *Id.*, 410; T. D. 32998) it was said "that a machine working metal and capable of producing machines or parts thereof in a relatively finished condition would be a machine tool within the commercial meaning of that term." United States v. Knauth (3 *Id.*, 419; T. D. 32999), Surgical Supply Importing Co. v. United States (3 *Id.*, 429; T. D. 33001), Knauth v. United States (3 *Id.*, 435; T. D. 33003), United States v. Bernard, Judae & Co. (3 *Id.*, 503; T. D. 33164), and Gallagher & Ascher v. United States (3 *Id.*, 520; T. D. 33168) also involved the question of what were machine tools. Neuman & Schwiers Co. v. United States (4 *Id.*, 64; T. D. 33310) and Favor, Ruhl Co. v. United States (4 *Id.*, 292; T. D. 33513) involved the same question.

In each case the article under consideration was ready for use as imported, and to operate it the application of *power only* was necessary.

From these cases the only rule of construction I can deduce is that the term "machine tool" in the common understanding was thought to mean a completed machine to which power other than that of the operator could be applied and that usually, though not always, such machines were designed to work upon metal. All these cases arose before the enactment of paragraph 165.

In that paragraph Congress defines the term "machine tools" to mean "any machine operated by other than hand power which employs a tool for working on metal," thereby limiting it to metal-working machines, which this court had not done, although it had suggested that commercially that characteristic was understood. It never had, however, been suggested or considered so far as can be concluded from the cases cited *supra* that a machine tool was anything less than a completed mechanism ready to perform its functions whenever power was applied thereto.

The language of the statutory definition "any *machine* * * * which employs a tool" necessarily implies that the machine is finished—ready to operate when the power is applied—and capable of performing its functions when the *tool* is supplied thereto. This traverse wheel grinder is at the most a tool or a part of a machine to be used in a machine tool. The fact that it contains a double worm thread and an automatic device which compels an emery wheel to travel back and forth upon a steel shaft does not elevate it to the dignity of a machine. It is simply a mechanical device which can not function and to which power can not be applied until it is placed upon and connected with, *i. e.*, made a part of the entirety, the machine tool. Any other finding I think is at variance with the conclusions reached by this court in the cases cited, tends to defeat the congressional intent, and is likely to cause uncertainty and confusion in the customs administration. Paragraph 165 includes with "machine tools" only such other machines as are manifestly ready to operate when power is applied. The rule of *ejusdem generis* requires machine tools to be equally complete.

---

### DISSENTING OPINION.

Dissenting opinion by SMITH, Judge, with whom DE VRIES, Judge, concurs:

We regret that we find ourselves unable to agree with the majority opinion in this case. The particular kind of Dronsfield patent steel grinder involved in the appeal is a machine in the sense that it has reciprocating parts which, cooperating together, produce the mechanical result for which the grinder was designed. As the grinder is a machine designed for sharpening the card-clothing of carding machines, it is a machine tool within the meaning of paragraph 165,

unless it be held to be incomplete because the supports upon which it is to be mounted are attached to the carding machine and not to the grinder and are not imported with it. The grinders are substitutes for a class of articles known as strickels, a kind of hand tool, and in the condition in which they are imported they are ready for use and do not require the application to them of any manufacturing processes or the addition of other parts in order to enable them to perform the function for which they were made. That they may grind the card-clothing it suffices to put them on the supports provided for them on the carding machine and then apply power to the pulley which is fitted to the grinder. The article in question, being ready for use, must be regarded, we think, as complete, and therefore dutiable as claimed by the importers.