**CENGAR U. S., INC.**

v.

**UNITED STATES.**

**C.D. 3762; Protest No. 65/19717–80501.**

United States Customs Court,
Second Division.

April 7, 1969.

Glad & Tuttle, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Steven R. Sosnov, New York City, trial attorney), for defendant.

Before RAO, Chief Judge, FORD, Judge, and OLIVER, Senior Judge.

OLIVER, Senior Judge:

The merchandise involved in this protest consists of certain "Cengar Air Operated Saws" imported from England. The collector of customs classified them as machine tools under paragraph 372 of the Tariff Act of 1930, as modified by T.D. 51802, and assessed duty at the rate of 15 per centum ad valorem.

The plaintiff challenges the classification, claiming that the said Cengar saw is not a machine tool, and is properly classifiable under paragraph 372 of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55649, or T.D. 55816, as a machine, other, not specially provided for, dutiable at the rate of 10½ per centum ad valorem, later amended by

the plaintiff to 11½ per centum, the proper rate under the provision.

The pertinent provisions of the statutes involved are as follows:

*Classified under:*

Paragraph 372, Tariff Act of 1930, as modified by T.D. 51802:

Machine tools (except jig-boring machine tools) .15% ad val.

Paragraph 372, Tariff Act of 1930, states:

\* \* \* That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

*Claimed under:*

Paragraph 372, Tariff Act of 1930, as modified by T.D. 54108:

Machines, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \* \*

Other (except \* \* \*) .....................11½% ad val.

---

It is noted from the briefs of opposing counsel, including a reply brief for the plaintiff filed after trial, that initially the plaintiff claimed in its protest a wrong rate of duty at 10½ per centum ad valorem, and a wrong trade modification under paragraph 372, whereas the claim should have been at the rate of 11½ per centum ad valorem under the same paragraph as modified by T.D. 54108. Such an infirmity or irregularity does not invalidate the protest and the court will proceed to consider the case on its merits. See Thornley & Pitt, Misco, Inc. v. United States, 58 Cust.Ct. 178, C.D. 2926 (1967); General Electric Co. v. United States, 7 Ct. Cust.Appls. 157, T.D. 36464; Carson M. Simon & Co. v. United States, 55 Cust.Ct. 103, C.D. 2558.

The issue herein is whether the Cengar saw is a "machine tool" as classified by the collector, or whether the said saw is properly classifiable as a machine, other, not specially provided for, as claimed by the plaintiff.

The record consists of the testimony of one witness and four documentary exhibits for the plaintiff, and the testimony of two witnesses and one documentary exhibit for the defendant. The official papers were admitted into evidence without being marked.

Plaintiff's exhibit 1 in evidence is an illustration of the merchandise covered by the importation in question. The protest is limited to the classification of the Cengar machine itself, which is shown in illustration No. 1 and, on the reverse side of the exhibit, in illustration No. 4. The classifications of the saw stand (illustration No. 3), the blades, the pipe clamps, and the Cengar green oil are not in issue. This exhibit is used by Cengar U. S., Inc., to advertise and display for sale the Cengar saw.

Plaintiff's exhibit 2 in evidence is an advertisement prepared by Cengar U. S., Inc., illustrating the blades and describing the various materials they are to be used to cut, and also illustrating how the Cengar saw is advertised and sold.

Plaintiff's exhibit 3 in evidence is a copy of an advertisement prepared by Cengar U. S., Inc., which by means of a

tape measure shows its compact size, and also illustrates how it is advertised and sold.

Plaintiff's collective exhibit 4 in evidence is a draft and the final version of a letter descriptive of the Cengar saw, prepared by the witness Jack Skeehan, president of Cengar U. S., Inc., and said to be factually correct.

Defendant's exhibit A in evidence is a list of users of the Cengar saw, used to illustrate the variety of users of the saw.

Mr. Jack Skeehan, president of the plaintiff corporation, testified substantially as follows: He has been associated with that firm since late 1962, and became its president about three years ago. The business of the firm is importing and marketing Cengar saws. He kept the sales records, supervised sales, did the purchasing of Cengar saws himself, arranged payments therefor, and did the general office supervisory work.

Mr. Skeehan identified plaintiff's illustrative exhibit 1, a page portraying and describing a Cengar saw and related equipment, including a can of green lubricating oil. The witness stated that the Cengar saw will cut almost anything, depending on the kind of blade fitted into the saw. It was so advertised for sale. He said there is available for the Cengar saw various blades, including a hacksaw blade, a timber or woodcutting blade, a diamond blade, and a stonecutting blade. The plaintiff sells the Cengar saw separately without blades, and also sells blades separately. Plaintiff's illustrative exhibits 1, 2, and 3 show that the blades will cut not only metal, but also formica, and plastic, wood, rubber, and fiberglass. The witness had seen the Cengar saw used to cut materials other than metals and had so used it himself. The saw is sold to the industrial trade. He described one use at Disneyland where it was used to cut plastic and foam material.

The Cengar saw is sold in about all areas of the United States, the plaintiff being the only importer. He gave his opinion that the Cengar saw was not a metal-cutting tool, and on cross-examination admitted that he had no engineering degree.

One of the users of the Cengar saw he stated is the Department of Water and Power of the City of Los Angeles to whom he had sold six timber blades for opening crates. He said that a hacksaw blade broken in half can be used in the Cengar saw if at least 5½ inches long, and that it is common practice to use a hacksaw blade in the Cengar.

Mr. Skeehan explained that T.P.I. means teeth per inch. The number of teeth per inch has some relationship to the material to be cut. There is, for example, a timber blade of four teeth per inch for wood cutting, an aluminum-cutting blade of 18 T.P.I. The blade illustrated in plaintiff's exhibit 2 is 18 T.P.I., and it can be used for cutting metal or other materials. A blade must have from 6 to 32 T.P.I. to cut metal, he stated.

The defendant's first witness was Mr. Frank S. Mannatt, a mechanical engineer in the Water Operating Division of the Los Angeles Department of Water and Power. He does the purchasing of tools and testing for that division. He was an aircraft engineer for seven years, and has been with the city for 21 years. In his opinion the Cengar saw is a standard metal-working machine. He purchased one for his division, and in every instance used it to cut metal. That was what he purchased it for.

He said that the harder the material to be cut, the more teeth-per-inch blade would be selected for use with the Cengar saw. An 18 T.P.I. blade would be used to cut ferrous metal. That same blade could be used to cut softer materials, but it would be a slower process and would not be practical. He said you could not use a five or six tooth blade to cut metal.

Mr. Mannatt emphasized that he could not speak for the entire Department of Water and Power. The Power Department is separate from the Water Department and there are also divisions within the Water section. He spoke only

for the Water Operating Division of the Water Department of the Department of Water and Power.

On cross-examination, Mr. Mannatt said his division has only one Cengar saw. He knew nothing about the purchases of Cengar saws Mr. Skeehan had referred to, as that was probably by another department or division.

On redirect, Mr. Mannatt said he considers a saw to be a tool, and the Cengar saw to be a machine tool.

Defendant's second witness was Mr. Leo H. Salcido, a senior maintenance worker and repairman in Mr. Mannatt's Water Operation Division. He described how he had used the Cengar saw to cut bolts, and had used it at most about 8 to 10 times. He had not used the pipe clamp. He has also seen his coworkers use the Cengar saw in the same way he had used it.

From the testimony of record and the exhibits in evidence, affording both facts and illustrations of the Cengar saw, we note that it is an air-powered portable saw, an article weighing 5½ pounds, of an overall length (excluding any saw blade fitted into its end) of 1 foot, 4¼ inches, of an overall height of 6½ inches, and overall depth of 1¾ inches, apparently of a pistol-grip style of maneuverability. It is observed from the record that only the Cengar machine is in issue, without any blade, and also that there may be fitted into the above-described apparatus different kinds of saw blades, depending upon whatever material one desires to saw. The plaintiff's witness testified that it will saw "almost anything." An 18 T.P.I. (teeth per inch) blade will saw bolts and other metal. A 4 to 6 T.P.I. blade will saw wood. Other blades will saw formica plastics, rubber, and fiberglass. It might be obvious that an 18 T.P.I. blade sturdy enough to cut metal could also cut wood and softer materials, but it would not be practical, one witness testified. Two witnesses for the defendant testified that they used one Cengar saw to cut bolts for the Los Angeles Water and Power Co., but knew of no other uses their company had put the Cengar saw to despite plaintiff witness' testimony that he had sold them six saw blades for wood (crate) cutting. There can therefore be no inference of a chief use. A conflict of opinions between opposing witnesses, one stating that the device is a machine while the other states it to be a machine tool is of no significance since this is a conclusion of law and the precise issue presently before the court.

In our opinion, the Cengar device in issue is a machine. That is not disputed. The question is whether it is properly classifiable as a machine tool. Since the tariff provision limits a machine tool to one that "works on metal" our inquiry is directed to the nature of the work of the machine portion of the Cengar saw and the significance of its adaptability to work on a multiple number of materials other than metal, such as wood, rubber, plastics and fiberglass, depending on the kind of blade inserted into the Cengar machine.

The legislative history concerning machine tools is amply set forth in cases already adjudicated on the subject. See United States v. Georgia Pulp & Paper Mfg. Co., 3 Ct.Cust.Appls. 410, T.D. 32998; United States v. Leigh & Butler, 7 Ct.Cust.Appls. 228, T.D. 36512; Alex. Benecke v. United States, 30 CCPA 55, C.A.D. 214. Those cases and other authorities cited therein show a steady consistency of the courts in adhering to the tariff concept of a machine tool as one that works on metal *only*. In Arthur W. Robson et al. v. United States, 33 Treas. Dec. 205, T.D. 37355, a machine *solely* employed for making metal snap fasteners, operated other than by hand, was held to be a machine tool; also, in W. White v. United States, 33 Treas.Dec. 514, Abs. 40936, a machine employed *exclusively* to punch holes in metal plates; The Georgia Pulp & Paper case, *limiting* machine tools to those working on metal. Later cases on machine tools and parts emphasize this tariff concept. As stated in Chas. Kurz Co. v. United States, 57 Cust.Ct. 73, C.D. 2733, a part which may be used with machines other

than a machine tool cannot be part of a machine tool. It cannot meet the exclusive dedication test laid down in United States v. Ford Motor Company, 51 CCPA 22, C.A.D. 831; and Lodge Spark Plug Co. v. United States, 49 Cust.Ct. 158, C.D. 2379.

The Cengar machine at bar is not dedicated to use with a metal-cutting blade. To pronounce the Cengar saw a machine tool dedicated to work on metal would be to ignore its other cutting functions.

Based on the foregoing the plaintiff's protest claim that the Cengar saw is classifiable under paragraph 372, as modified by T.D. 54108, as a machine, other, not specially provided for, dutiable at 11½ per centum ad valorem, is sustained.

Judgment will be entered accordingly.