CENGAR U. S., INC.

v.

UNITED STATES.

C.D. 4157; Protest 66/79551–82442.

United States Customs Court,
Second Division.

Dec. 29, 1970.

Glad & Tuttle, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Frederick L. Ikenson, and James Caffentzis, New York City, trial attorneys), for defendant.

Before RAO, Chief Judge, and FORD, and NEWMAN, Judges.

FORD, Judge:

This case covers an importation of an article known as a Cengar air saw which is operated by a pneumatic, non-electric motor. The collector of customs at the port of Los Angeles, California, classified said saw as a hand-directed or -controlled tool with pneumatic or self contained non-electric motor suitable for metal-working under item 674.60, Tariff Schedules of the United States, and assessed duty thereon at the rate of 15 per centum ad valorem.

Plaintiff, while admitting that it may be employed at times as a hand-directed or -controlled tool, neverthelesss contends said article is properly dutiable at only 9 per centum ad valorem under item 674.70, Tariff Schedules of the United States, since the material which it cuts is dependent upon the blade utilized. Alternatively, plaintiff contends it is not hand-directed or -controlled and properly subject to classification under item 678.-50, Tariff Schedules of the United States, and as such subject to duty at the rate of 10 per centum ad valorem as a machine, not specially provided for.

The record in the case of Cengar U. S., Inc. v. United States, 298 F.Supp. 504, 62 Cust.Ct. 350, C.D. 3762 (1969), involving the same merchandise but subject to the Tariff Act of 1930 rather than the present statute, was incorporated herein.

The pertinent portions of the statutory provisions involved herein provide as follows:

Subpart F headnotes:

1. For the purpose of this subpart—
    (a) the term "machine tool" means any machine used for shaping or surface-working—
        (i) metals (including metallic carbides);
        (ii) stone, ceramics, concrete, asbestos-cement and like mineral materials, or glass in the cold; or
        (iii) wood, cork, bone, hard rubber or plastics, or other hard materials, whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it, but does not include rolling mills (item 674.-20) or the hand-directed or—

**1406**

controlled tools provided for in items 674.60 and 674.70 of this subpart and item 683.20 * * *; and

(b) the term "metal-working" includes metallic-carbide-working.

\* \* \* \* \* \* \*

Hand-directed or—controlled tools with pneumatic or self-contained non-electric motor, and parts thereof:

| | | |
|---|---|---|
| 674.60 | Tools suitable for metal-working and parts thereof | 15% ad val. |
| 674.70 | Other | 9% ad val. |
| 678.50 | Machines not specially provided for, and parts thereof | 10% ad val. |

The record in the incorporated case was summarized with great particularity in the decision of the late Judge Oliver and we do not deem it necessary to include a further synopsis. The record in the instant case consists of further testimony of Mr. John C. Skeehan who testified in the incorporated case. Counsel for the respective parties at the outset of the trial stipulated that the imported saw contains a pneumatic non-electric motor and counsel for plaintiff admitted that the imported article may be at times used as a hand-directed or -controlled tool but not at all times.

Mr. Skeehan testified that the merchandise depicted in plaintiff's exhibit 1 in the incorporated case as illustrations 3 and 2 covering a table and pipe clamp respectively were not contained in the importation presently before the court. The witness stated his answers would be the same to the same questions propounded to him in the incorporated case. The saw will not cut anything without a blade. They have a blade which will cut metallic carbide and a diamond blade for cutting glass as well as a timber blade for cutting wood. The stand or table illustrated in plaintiff's exhibit 1 of the incorporated case was specifically designed for use with the saw. Its use was described as follows:

A. It's clamped into the lower section of the stand with the appropriate blade protruding above the surface of the stand. It acts sort of like a jigsaw. It allows the material to be cut on the surface of the stand and moved against the blade.

The witness admitted that the statement contained in defendant's exhibit A of the incorporated case which was prepared by him does contain a statement that "one inexpensive blade is used to cut all materials." This, with the exception of rock, is correct according to witness Skeehan. It will cut all of the items listed in plaintiff's exhibit 2 including copper, brass, steel, lead and aluminum. The imported article is considered by the witness as a Cengar air-powered saw irrespective of the type of blade being utilized. The hacksaw type of blade, which cuts metal, is sold by his company in excess of all others. He sells a very small percentage of blades which are not suitable for cutting metal. The blades imported on the entry before the court are known as Cengar green blades which at the time of importation were the principal blades sold. This blade was suitable for cutting metal and will cut anything up to titanium. This is the blade advertised as being the one which will cut all material in defendant's exhibit A of the incorporated case.

In order for plaintiff to overcome the presumptively correct classification, its primary burden is to establish the involved saws are not 1. hand-controlled or -directed tools, and are not 2. suitable for metal-working. Plaintiff contends in order for a machine to be hand-directed or -controlled, it must be exclusively used in that manner. In arriving at this conclusion that the language dictates this interpretation, plaintiff relies upon certain information contained in the so-called Brussels Nomenclature. Heading 84.49 of said Brussels Nomenclature utilizes the heading "Tools For Working in the Hand, Pneumatic or with Self Contained Non-Electric Motor." This language is sufficiently different from that employed in the Tariff Schedules of the United States and is not to be considered a guide as to the intention in enacting the provision involved herein. Such information may be utilized where the competing provisions are identical or sufficiently similar. Hollywood Accessories, Division of Allen Elec-

tronics & Equipment Co. v. United States, 282 F.Supp. 499, 60 Cust.Ct. 360, C.D. 3391 (1968).

Basically the language of 674.60, Tariff Schedules of the United States, is a use provision. General Interpretative Rule 10(e) (i) sets the criteria in determining classifications controlled by use in the following language:

> (e) in the absence of special language or context which otherwise requires—

>> (i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined;

■■ A classification by customs officials of an article controlled by use carries with it the presumption that the classifying officer found all facts necessary to establish its chief use. Frank P. Dow Co., Inc. v. United States, 21 CCPA 282, T.D. 46816 (1933). The record in the case at bar is devoid of any evidence which would establish the chief use of the Cengar air saw in a manner other than use as a hand-directed or -controlled tool. The record merely establishes that a stand or table has been specifically de-signed for the tool and they have been imported and sold. There is no evidence which would establish, as required under General Interpretative Rule 10(e) (i), that such use exceeds all other uses. Plaintiff has accordingly failed to overcome the presumption attaching to the classification as hand-directed or -controlled tools.

The inferior heading under which classification was made provides the article described in the superior heading be suitable for metal-working. Suitability has been held to mean actually, practically, and commercially fit for the use described. J. M. Altieri et al. v. United States, 63 Cust.Ct. 347, C.D. 3918 (1969); Mattoon & Company et al. v. United States, 297 F.Supp. 1404, 62 Cust. Ct. 291, C.D. 3747 (1969).

■ The evidence adduced herein is that one blade will cut anything up to titanium including copper, brass, steel, lead, and aluminum. This is certainly sufficient to bring it within the statutory language of suitable for metal-working. We have reviewed the cases relied upon by plaintiff and do not deem them controlling in the instant case.

In view of the foregoing, we are of the opinion that plaintiff has failed to overcome the presumption of correctness attaching to the classification.

The claims in the protest are therefore overruled. Judgment will be entered accordingly.