(C.D. 4566)

AMICO, INC. (FORMERLY KNOWN AS : EXHIBIT SALES, INC.)
v. UNITED STATES

Court No. 70/55493

(Decided November 6, 1974)

*Allerton deC. Tompkins* for the plaintiff.

*Carla A. Hills*, Assistant Attorney General (*John A. Gussow* and *Andrew P. Vance*, trial attorneys), for the defendant.

MALETZ, Judge: This case involves the proper tariff classification of merchandise invoiced as an "Inflatable Santa in Ball Christmas wall decoration" that was imported from Hong Kong and entered at Philadelphia, Pennsylvania in 1970. The importations were classified by the government under item 737.40 of the tariff schedules, as modified by T.D. 68–9, as toy figures of animate objects and duty was assessed at the rate of 24 percent ad valorem. The government claims alternatively that the importations are classifiable under item 737.90 of the tariff schedules, as modified by T.D. 68–9, as toys, not specially provided for, which are also dutiable at 24 percent ad valorem.

Plaintiff claims that the imported merchandise is properly classifiable under item 772.97 of the tariff schedules, as modified by T.D. 68–9, as Christmas ornaments, dutiable at the rate of 11.5 percent ad valorem.

The pertinent provisions of the tariff schedules read, as follows:

Classified under:

> Subpart E [Schedule 7, Part 5] headnotes:
>
> 1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules * * *__
>
>   *   *   *   *   *   *   *
>
> 2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.
>
>   *   *   *   *   *   *   *

Toy figures of animate objects (except dolls):
  Not having a spring mechanism:
    * * * * * * *
    Not stuffed:
      * * * * * * *

737.40            Other _____          24% ad val.

Alternative classification claimed by government:

Toys, and parts of toys, not specially provided for ·
    * * * * * * *

737.90       Other _____          24% ad val.

Classification claimed by plaintiff:

* * * Christmas ornaments; * * *; all
  . the foregoing * * * of rubber or plastics:
772.95          Christmas tree ornaments_____          * * *
772.97          Other _____          11.5% ad val.

At the outset, it is to be noted that there is a presumption of correctness attendant not only upon the classification of the imported articles under item 737.40 as toy figures of animate objects, but also upon each subsidiary fact necessary to support that conclusion. Since this original classification required a subsidiary finding that the imported articles were, *inter alia*, toys, "[w]hen the government·asserted the broader provision, covering toys, in general [i.e. item 737.90], as an alternative to the original classification, it * * * [is] permitted to rely on the presumption of correctness attaching to that subsidiary finding * * *." *United States* v. *New York Merchandise Co.*, 58 CCPA 53, 58–9, C.A.D. 1004, 435 F.2d 1315, 1318–9 (1970).

· In this circumstance, plaintiff here has the twofold burden of establishing that the presumptively correct classification of the imported articles as toys was in error and that the articles are properly classifiable under item 772.97 as other Christmas ornaments. In other words, in order to prevail, it is incumbent on plaintiff to prove that the importations were not chiefly used for the amusement of children or adults [1] but rather were chiefly used for ornamental purposes. And in this connection it has been consistently held that articles chiefly used for ornamental, decorative or display purposes are outside the scope of the toy provisions. E.g., *Fred Bronner Corp.* v. *United States*, 57 Cust. Ct. 428, 436, C.D. 2832 (1966); *Louis Marx & Co.* v. *United States*, 65 Cust. Ct. 672, 675, C.D. 4156 (1970).

---

[1] An object is one of amusement under the tariff schedules if its "purpose * * * is to give the same kind of enjoyment as playthings give, * * * whether the object is to be manually manipulated, used in a game, or * * * worn." *United States* v. *Topps Chewing Gum*, 58 CCPA 157, 159, C.A.D. 1022, 440 F.2d 1384, 1385 (1971).

It is also important to observe that in toy cases it is not uncommon that "the probative effect of the sample imports, themselves, is such as not only to prove the original classification to have been erroneous, but also to provide a sufficient basis to establish the propriety of the asserted classification." *United States* v. *New York Merchandise Co.*, *supra*, 58 CCPA at 59, 435 F.2d at 1319. See also e.g., *United States* v. *Sears, Roebuck & Co.*, 27 CCPA 235, 238, C.A.D. 91 (1940); *New York Merchandise Co.* v. *United States*, 62 Cust. Ct. 38, 41, C.D. 3671, 294 F. Supp. 971, 974 (1969); *Louis Marx & Co.* v. *United States, supra*, 65 Cust. Ct. at 674–5; *B. Shackman & Company* v. *United States*, 67 Cust. Ct. 372, 383, C.D. 4300 (1971). Particularly relevant on this aspect is *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, C.D. 3061 (1967), where the court held, primarily on the basis of the sample imports, that the government's classification of certain nodding head dog-like figures as toy figures of animate objects under item 737.40 of the tariff schedules was erroneous. In finding that the articles were not toys, the court made the following comments that bear repetition here (*id.* at 40–1):

> \* \* \* [A]s is especially true in toy cases, the sample merchandise can offer potent evidence on the question of use, and when in harmony with the other evidence of record, can permit the drawing of inferences as to use nationally. *Fred Bronner Corp., supra.* There is precedent under the two previous tariff acts for viewing sample evidence as sufficiently persuasive to rebut the presumption of correctness on a toy classification and to shift the burden to the defendant. *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995; *United States* v. *Borgfeldt & Co.*, 13 Ct. Cust. Appls. 620, T.D. 41461.

> We are inclined to the view that the present case presents one of those occasions where the sample merchandise itself supplies the necessary persuasiveness to carry the issue for the plaintiff, at least when the presumptive correctness of the collector's classification stands unsupported. The presence of a sharp and rather easily exposed hook renders the merchandise patently unusable by children of tender years. As for those over puberty, the articles represent essentially passive, uncomical, almost nonmanipulatable, yet finely finished replicas of well-known dog species. As such they are eminently suitable for purposes of display or ornamentation, no matter where that may be, and substantially incapable of functioning as objects of play or amusement in any normal or intelligent use. It is not a question of their appearing more suitable for one use than another as was the case in *Fred Bronner Corp., supra*, but of their offering mute testimony of their substantial incapability of use as classified. This type of potent evidence when in harmony with all other evidence presented satisfies the court that a shift in burden on this issue has taken place.

With these considerations in mind, the court must conclude on the basis of an examination of a sample illustrative of the importations

in the present case that the importations are not toys, i.e. articles chiefly used for the amusement of children or adults, but rather are chiefly used for Christmas ornamental purposes.

The sample consists of an inflatable image of a plastic, stylized Santa Claus figure (measuring about 10 inches in length when inflated) which is contained in an inflatable plastic "ball" about 12½ inches high and 8 inches thick when inflated, with the figure attached to the ball by a small tube.[2] The ball has a transparent plastic face or front on which is imprinted in gold, red and green a Santa Claus in a sleigh drawn by eight reindeer. Further, the ball has an opaque white plastic back on the inside of which is inscribed "Merry Christmas." The top, sides and bottom of the ball are also composed of opaque, white plastic, and on the top portion there are imprinted 12 sprigs of green and gold holly leaves with red berries. On the outside back of the ball near the top there is a tab with a hole in it for the purpose of hanging. At the bottom circumference of the ball there is a round disc about 3½ inches in diameter which enables the ball to stand in an upright position. Contained on the back of the ball are two plastic nozzles; one for inflating the Santa Claus figure and the other for inflating the ball.

This sample, with its obvious and pronounced identification with Christmas; with the Santa Claus figure; with the typical Christmas colors (white, gold, green and red); with its reindeer, sleigh and holly sprig designs; with its elaborate decorative effects; with a tab for hanging and a flat bottom disc to enable it to stand upright; identifies it in the strongest way as being an attractive Christmas holiday season decoration and not a toy. In short, it must be concluded from an examination of the sample, that the importations are eminently suitable for purposes of Christmas ornamentation and entirely unsuitable as objects of play or amusement in normal use.

In harmony with the conclusion that the importations are Christmas ornaments and not toys is the testimony of the manager of plaintiff's import department. To the extent relevant, her testimony was to the following effect: She has observed the imported articles' use on a number of occasions in the Philadelphia, Pennsylvania area—and in the States of New York, New Jersey, Illinois and Nevada. In this connection, she had seen the article used only during the Christmas season at which time she observed it in the Christmas decoration departments of various stores and in people's houses where it was suspended by the tab on the back from the ceilings, windows or doorways as a Christmas decoration. She had never seen the article used as a plaything.

Contrary to the foregoing testimony was the testimony of the wife of a Customs Service import specialist at the port of Philadelphia.

---

[2] While the article containing the Santa Claus figure is referred to as a "ball," actually its configuration when inflated resembles that of a round cushion or a rounded pill.

She testified that one of her five children had received a Santa Claus contained in an inflatable ball as a Christmas present; that her three-year-old and one-year-old child had played with it like a ball and referred to it as a toy; that the article lasted about two weeks after which it started to deflate; and that she had never seen anybody else use the article. This testimony, however, cannot be given much weight considering that the witness had seen the article used by her children for only two weeks. Further, such sporadic use by these children is scarcely decisive of the nature of the article particularly in light of the fact that not everything that a child plays with or that amuses a child is a toy. See e.g., *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, 111, T.D. 31115 (1910).

In summary, it is held that the importations in issue are properly classifiable under item 772.97 as other Christmas ornaments. Plaintiff's claim is therefore sustained and judgment will be entered accordingly.