NADEL & SONS TOY CORP., PLAINTIFF, *v.* UNITED STATES, DEFENDANT

No. 76-11-02616

Before RAO, *Judge.*

(Dated July 15, 1982)

*Mandel & Grunfeld (Steven P. Florsheim* at the trial and on the briefs, *Robert B. Silverman* on the briefs) for plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office (*Robert H. White* at the trial and on the briefs) for defendant.

RAO, *Judge:* This civil action involves the proper classification of merchandise described on the commercial invoices as "plastic push button patriotic savings banks," item No. 6165. It was manufactured by General Industrial Company in Kowloon, Hong Kong and imported into the United States by the plaintiff on August 19, 1975 at the port of New York. The merchandise can best be described as a nine-inch plastic replica of a cast iron bank in the figure of Uncle Sam standing on a decorated platform approximately two inches in height. The Uncle Sam figure is brightly painted with red and white striped pants, black shoes, blue jacket with tails, blue vest with gold-painted buttons and stars and a white stand-up collar. White cuffs appear at the ends of the jacket sleeves. The figure has white hair and a white beard and wears a gray high hat with a navy band trimmed with gold-painted stars. It holds a light blue umbrella in the left hand while the right hand is extended at waist height. The coin to be deposited in the bank is placed in the extended hand. When the plunger to the left of the figure is depressed, the right hand drops the coin into a satchel to the right and slightly in front of the Uncle Sam figure, which opens to receive it. The coins are stored in the base of the bank and can be removed by extracting a disc under the bank which reveals an opening of approximately 1¼ inches in diameter.

The United States Customs Service (hereinafter Customs) classified the merchandise under item 737.90, Tariff Schedules of the United States as modified by Presidential Proclamation 3822, T.D. 68–9 (hereinafter TSUS), as "Toys, and parts of toys, not specially provided for: Other," with duty at the rate of 17.5 percent ad valorem.

Plaintiff claims that the merchandise is properly classifiable under item 774.60, TSUS, as "Articles not specially provided for, of rubber or plastic: Other," with a duty rate of 8.5 percent ad valorem; or alternatively, under item 772.15, TSUS, as "* * * house-

hold articles, not specially provided for: Other," with a duty also at the rate of 8.5 percent ad valorem.[1]

It is defendant's position that the plastic banks are "toys" for classification purposes. The word "toy" is defined in schedule 7, subpart E, headnote 2:

> 2. For the purposes of the tariff schedules a *"toy"* is any article chiefly used for the amusement of children or adults.

Defendant claims that the amusement feature of the bank is greater than any other feature of the merchandise, including the saving factor.

Plaintiff claims that the bank is chiefly used for saving and that its amusement feature is ancillary or incidental to this use. At the trial, plaintiff adduced evidence to the effect that the merchandise is designed for persons over the age of five years and that it was marketed throughout the country as a premium and gift shop item, although it was also sold to toy retailers. Plaintiff's president, Melvin Nadel, hoped that the patriotic theme of the "Uncle Sam" figure would appeal to end users during the Bicentennial Celebration, and this expectation was realized when the item became popular and sold well. (R. 23). The merchandise is offered for sale through plaintiff's catalogue (plaintiff's exhibit 2) under the category "banks" and is not included with the toys, which are listed separately.

Defendant's one witness, John Peter Hayden, Jr., is the manager of marketing services at the Museum of the City of New York. In this position he oversees the museum shop, where reproductions of antique dolls and toy banks are sold (R. 61). Prior to this employment he was the director of the Ancram Restoration, a Victorian village that was restored to its condition in the last quarter of the 19th century, where replicas of merchandise available during that era were sold. It was Mr. Hayden's opinion that the merchandise, as a bank, is a toy, and that it is suitable for sale to children. He differentiated between "still banks" which have no moving parts and those that have a mechanical feature, and said that all banks are toys in the historical field (R. 68–69). His expertise, credentials or background as an expert witness for this type of merchandise were not, however, established, nor were the many authorities to which he alluded (R. 69) ever identified.

The issue in this action is whether the merchandise is chiefly used for the amusement of children or adults and the burden is on the plaintiff to prove that it is not, since the classification by Customs is presumptively correct. 28 U.S.C. 2635; *Joseph E. Seagram & Sons, Inc.* v. *United States,* 30 CCPA 150, 157, C.A.D. 227 (1943).

Plaintiff relies on this court's decision in *House of Ideas, Inc.* v. *United States,* 2 CIT 68 (1981), as a precedent, and we are inclined

---

[1] Plaintiff had also claimed alterntatively that the merchandise was classifiable under item 737.65, TSUS, as "magic tricks, and practical joke articles" with a duty rate of 10 percent ad valorem, but it abandoned this claim at the trial.

to agree that, although the merchandise there, papiermache banks shaped like clowns, is not the same or similar to the instant merchandise, the principles enunciated therein are controlling here.

The issue in *House of Ideas, Inc., supra,* was whether a bank in human shape is a doll or a bank, with the government arguing that the item did not possess "two equally essential functions" as required in *Janex Corp.* v. *United States,* 80 Cust. Ct. 146, C.D. 4748 (1978). The court stated:

> The design and construction of plantiiff's exhibit #1 belie that contention. It is patently clear that the object has two design characteristics. One, the doll component, has the superficial appearance of a human figure. The other, the bank component, has the function of a receptacle and storage space for coins or folded bills. Inasmuch as the commercial viability of the item depends on its functioning as a bank, this aspect of the article is not insignificant or incidental to the use of the article as a replica of a human figure.

The commercial value of the merchandise involved here also depends on its functioning as a bank or receptacle for and storage space for coins or folded bills. Plaintiff's witness, Mrs. Jamoom, testified that she purchased a similar bank for her children, who never used it without inserting a coin (R. 51), that the bank was kept on a shelf and was only brought out when some person or guest had given the children money to insert into it. The children did not otherwise play with it.

It should also be noted that the portion of the item utilized for the storage of coins is substantial and would hold a large number of coins, becoming heavier and heavier with each use. It is doubtful that a child or adult would play with an item that could contain a significant number of coins, particularly since it could be mislaid.

While the manner in which an article is marketed is not determinative of its classification, it is a factor to be considered. *Russ Berrie & Co.* v. *United States,* 76 Cust. Ct. 218, 226, C.D. 4659, 417 F. Supp. 1035, appeal dismissed, 63 CCPA 125 (1976); *United States* v. *Ignaz Strauss & Co.* 37 CCPA 32, C.A.D. 415 (1949); *Rene D. Lyon Co.* v. *United States,* 80 Cust. Ct. 39, C.D. 4735 (1978). Plaintiff marketed and sold the merchandise as a bank rather than as a toy. The testimony of Mr. Nadel established that the bank was sold to gift stores, to parks, to premium establishments and to banks which bought them as giveaways (R. 22). The Uncle Sam figure is an added figure to sell the bank (R. 23).

Witnesses who are in the business of buying and selling merchandise are qualified to give their opinion as to its use. They have every incentive for knowing the uses to which their wares are or may be put; therefore it is fair to assume, at least *prima facie,* that the uses known to them are the uses of the articles. *Klipstein* v. *United States,* 1 Ct. Cust. Appls. 122, 124, T.D. 31120 (1910), Sturm, *Customs Law and Administration,* § 57.11, p. 667. Also, responsible

executives, concerned with designing, specifying, importing, promoting and selling merchandise may testify what its uses are, on the hypothesis that such persons must of necessity know those uses. Such evidence is of greater evidentiary value than sporadic instances of actual uses. *F. B. Vandegrift & Co.* v. *United States,* 56 Cust. Ct. 103, C.D. 2617 (1966). Mr. Nadel is plaintiff's president and does all the buying, some of the selling and the administrative work. He has been in this business for over forty years (R. 8).

In *United States* v. *Topps Chewing Gum,* 58 CCPA 157, C.A.D. 1022 (1971), our appeals court clarified one of the tests to be utilized in determining whether an article constitutes a toy. In deciding whether buttons with humorous sayings on them were toys or buttons of metal, the Court stated:

> After noting that prior to the enactment of the TSUS a "toy" was defined as a child's plaything, the [trial] court cited *Wilson's Customs Clearance, Inc.* v. *United States,* 59 Cust. Ct. 36, C.D. 3061 (1967), for the proposition that the TSUS removed the limitation regarding the users' age but left the requirement that the object be a plaything. We think this conclusion is unsupported by the wording of the TSUS or by case authority. In the *Wilson's* case the court did not hold that to be a toy an object had to *be* a plaything, but that the "character of amusement involved was that derived from an item which is essentially a plaything." *Id.* at 39. The court thus stressed the quality of mind or emotion induced by the object as controlling and we think that is the best approach to interpreting the TSUS definition. If the purpose of an object is to give the same kind of enjoyment as playthings give, its purpose is amusement, whether the object is to be manually manipulated, used in a game, or, as here, worn.

The purpose of the article involved in this action is the saving and storing of coins. That the coins are received into the article in a manner that amuses is incidental and not controlling. While one may sit and idly push the plunger which causes the arm to go down and the satchel to open (R. 25), there is little "amusement value" in such activity, and this pastime would soon be abandoned.

This court now considers the representative sample of the merchandise introduced into evidence as plaintiff's exhibit 1. Representative samples of the merchandise are often potent witnesses. Sturm, *supra,* Section 57.10 Samples, p. 665 and cases cited therein. Indeed, in toy cases, it is not uncommon for the samples themselves to be of sufficient probative value to prove the original classification erroneous and the asserted classification correct. *Amico, Inc.* v. *United States,* 73 Cust. Ct. 150, C.D. 4566 (1974). This sample, with its obvious and pronounced similarity to the Uncle Sam figure, and its dominant banking theme identifies in the strongest way as being an attractive article for the storage of money and its mechanical feature of having the coin deposited into the satchel when the lever is pushed is designed to make saving

coins attractive. That it may also ·incidentally amuse children or adults does not make it a toy.

We consider lastly defendant's argument that the legislative history of the TSUS as gleaned from the *Explanatory Notes to the Brussels Nomenclature* and the *Tariff Classification Study* support classification of the merchandise as a toy. Defendant cites Heading 97.03 of the *Brussels Nomenclature*, which provides:

97.03—OTHER TOYS, WORKING MODELS OF A KIND USED FOR RECREATIONAL PURPOSES

This heading covers all toys not included in heading 97.01 or 97.02. Many of the toys in the present heading are mechanically or electrically operated (e.g. by spring-operated [clock work] or electric motors, etc.).
This heading includes:

\* \* \* \* \* \* \*

(22) Toy money boxes; \* \* \*

Defendant claims that the wording of this provision is sufficiently similar to item 737.90, TSUS, to provide the necessary nexus so that Brussels can be considered a proper guide to congressional intent. *Herbert G. Schwarz, dba Ski Imports* v. *United States*, 57 CCPA 19, C.A.D. 971, 417 F. 2d 1391 (1969).

The provision to which the *Brussels* heading must be compared for similarity is:

Toys and parts of toys, not specially provided for:

\* \* \* \* \* \* \*

739.90        Other.................................... 17.5% ad valorem


Where the order, language or phraseology of the Tariff Schedules and the Brussels Nomenclature differ, the latter cannot be used as a guide to the intention of the Tariff Commission or of Congress. *Hollywood Accessories Division of Allen Electronics & Equipment Co.* v. *United States*, 60 Cust. Ct. 360, C.D. 3391, 282 F. Supp. 499 (1968); *M. Hohner Inc.* v. *United States*, 63 Cust. Ct. 496, 500–501, C.D. 3942 (1969); *Cengar U.S. Inc.* v. *United States*, 65 Cust. Ct. 677, C.D. 4157, 319 F. Supp. 1404 (1970).

It is clear that the language, order and arrangement of the provision of the TSUS to be compared with Heading 97.03, Brussels Nomenclature, are dissimilar and that Brussels should not be considered in determining whether the merchandise herein is toys for tariff schedule purposes.

Defendant's brief also quotes at length from two provisions of the *Tariff Classification Study*, Schedule 7 (1960) at pages 290 and 295. Without setting these statements out *in toto*, we observe that the result of the first discussion was to change the basic concept of what constitutes a toy to include articles for the amusement of adults as well as those for the amusement of persons under the age

of puberty. The second statement explains how paragraph 1513 of the old schedule had been subdivided into items 737.80 and 737.90 and the changes in duties involved in the consolidation of all toys under these provisions. Neither explanatory discussion alludes to banks, money boxes or any articles which would indicate an intention that the merchandise in question is a toy for tariff schedule purposes.

We conclude that the merchandise is not a toy and consider whether the classification claimed by plaintiff is the correct one, i.e., that the merchandise is "articles, not specially provided for, of rubber or plastics, other." Paragraph 12 of plaintiff's complaint alleges that "the subject merchandise is 'of plastics' " and defendant's answer admitted the truth of this allegation. Since there is no special provision that specially provides for savings banks, banks or money boxes in the TSUS, plaintiff has established that the claimed classification is the proper one.

The protest is sustained and judgment will be entered accordingly.