60 CCPA

The UNITED STATES, Appellant,

v.

MITSUBISHI INTERNATIONAL CORP., Appellee.

Customs Appeal No. 5472.

United States Court of Customs and Patent Appeals.

Jan. 18, 1973.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, John A. Gussow, New York City, for the United States.

Brooks & Brooks, New York City, attorneys of record, for appellee; Eugene F. Blauvelt, Charles P. Deem, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

ALMOND, Judge.

This is an appeal by the United States from the decision and judgment of the United States Customs Court [1] sustaining appellee's claim that the importation

---

1.  66 Cust.Ct. 413, C.D. 4227 (1971).

in issue, described as "NGK Insulators" from Japan, was erroneously assessed with customs duties under item 535.14, Tariff Schedules of the United States (TSUS), which provides for "Other" ceramic electrical insulators and ceramic electrical ware, at a rate of duty at 30 per cent ad valorem, and that the merchandise in issue is properly dutiable at 17.5 per cent ad valorem under item 685.90, TSUS, providing, inter alia, for parts of lightning arresters.

The merchandise involved here was described by the Customs Court as "a ceramic housing * * * of one piece circular construction, approximately 4 feet high, weighing between 400 and 500 pounds. The outside configuration is that of circular spaced saucers (about 12 inches in diameter), rising in a pyramid one above the other, forming what one of plaintiff's witnesses referred to as a 'shed' profile." Except for the fact that the housing is generally cylindrical rather than pyramidal, the merchandise generally conforms to this description.

Appellant contends that the trial court erred, as a matter of law, in sustaining the importer's claim; that the evidence of record does not provide any substantial basis upon which to predicate the trial court's decision; that the merchandise in issue consists of ceramic electrical ware or insulators, properly found dutiable by customs officials under item 535.14, TSUS; and that the claimed provision, item 685.90, TSUS, sustained below, is precluded from application herein by virtue of headnote 1, part 5, schedule 6, TSUS, excluding electrical insulators and ceramic electrical ware from classification under said part.

The statutes involved are:

Tariff Schedules of the United States, 19 U.S.C. § 1202:

*Classified under:*
 Schedule 5, Part 2, Subpart D:
  Ceramic magnets, ceramic electrical insulators whether or not in part of metal, and other ceramic electrical ware, including ferroelectric and piezoelectric ceramic elements:
 535.11 Porcelain insulators, with metal parts cemented thereto and comprising not less than 30 percent of the weight thereof, used in high-voltage, low-frequency electrical systems ................... * * *
* * * Ferrities ................. * * *
 535.14 Other ................... 30% ad val.
*Claimed under:*
 Schedule 6, Part 5:
  Part 5 headnotes:
   1. This part does not cover—
    (i) electrical insulators or insulating materials (classifiable in other schedules according to materials of which made);
    * * * * * *
    (iii) ceramic electrical ware (part 2D of schedule 5); * * *
    * * * * * *
 685.90 Electrical switches, relays, fuses, lightning arresters, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes and other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof ........ 17.5% ad val.
    * * * * * *

*General Headnotes and Rules of Interpretation:*

10. *General Interpretative Rules:* For the purposes of these schedules—

* * * * * *

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

* * * * * *

(ii) comparisons are to be made only between provisions of coordinate or equal status, i. e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading.

(ij) a provision for "parts" of an article covers a product solely or chiefly used as

a part of such article, but does not prevail over a specific provision for such part.

The Customs Court held that the imported ceramic housings are not insulators "in the tariff sense," but are ceramic electrical ware chiefly used as parts of lightning arresters. It sustained the protest to the classification for the reason "that they are relatively more specifically provided for as parts of lightning arresters than as ceramic electrical ware of the class or kind excluded from schedule 6, part 5 * * *."

We agree with the Customs Court in regard to its determination that the housings are ceramic electrical ware even though not insulators in the tariff sense. The record supports the conclusion that the primary function of the housing is to afford protection to the lightning arrester from the elements. The housing requires insulating properties of the kind provided by porcelain because it is used between energized and grounded parts of the arrester and not because its primary function or purpose is that of an insulator.

■ Appellee has argued that the claimed classification should stand because it proved that the original classification as "insulators" was erroneous and the presumption of correctness has fallen. If this were true, appellant would bear the burden of proving the original classification was correct at least to the extent that the housings are "ceramic electrical ware." This was not done, appellee argues.

We find no merit in appellee's position. First, the record shows that appellant's witness Yost, a witness whose qualifications are not questioned, testified that the housings were ceramic electrical ware. This was not rebutted and, in fact, was conceded by appellee's counsel who objected to the line of questioning by which appellant was trying to establish the nature of the housings as follows:

Mr. Deem: Your honor, I must object to this line of questioning. There is no burden here for the defendant to meet, as far as ceramic electrical ware. I adduced no testimony concerning this matter, and I make no claim that this article, Exhibit 2, is not ceramic electrical ware, using that phraseology.

Furthermore, it is our opinion that a ceramic insulator is not a separate class but a species of the broader class of ceramic electrical ware. Accordingly, it must be presumed that the classifying official determined the housing to be ceramic electrical ware and, more specifically, a ceramic insulator. Therefore, the presumption of correctness did not fall entirely merely because appellee successfully proved the housings were not insulators within the meaning of item 535.14.

■ As we view it, the dominant and controlling issue is whether the Customs Court erred in not finding the claimed provision, item 685.90, TSUS, to be inapplicable by virtue of exclusionary headnote 1(iii), part 5, schedule 6.

The lower court considered the threshold issue to be whether the merchandise —designated "housings" in the opinion —are parts of lightning arresters within the meaning of item 685.90. It resolved the stated issue by finding, and we do not disagree, the "entire record" persuasive, prima facie, of the fact that the instant ceramic housings are lightning arrester parts, noting, however, that "the purpose and function of a ceramic housing in a lightning arrester might have been more complete or might have been more clearly explained in the record."

On the premise that the subject housings are, in fact, parts of lightning arresters, the court addressed itself to the issue of whether they are excluded from any classification under the claimed item 685.90 on the basis of the exclusionary headnote part 5, schedule 6, which precludes classifying, inter alia,

"electrical insulators * * * (classifiable in other schedules according to materials of which made)" and "ceramic electrical ware (Part 2D of Schedule 5)" within the claimed provision.

Finding that the schedule 6, part 5 headnote generated an enigma as to what it does not cover, in that the tariff schedules do not specifically define the breadth of the terms "ceramic electrical insulators" and "other ceramic electrical ware," the court turned to "the relevant context of the TSUS General Headnotes and Rules of Interpretation." It considered that the rule of relative specificity, codified in General Interpretative Rule 10(c), was applicable, and pursuant thereto held the claimed provision for parts of lightning arresters more difficult to satisfy than the provision for "ceramic electrical insulators" and other "ceramic electrical ware."

After a thorough review of this record and a careful analysis of the Customs Court's opinion, we are persuaded that the court committed reversible error in sustaining appellee's claim that the subject importation was erroneously assessed with duties under item 535.14, TSUS.

It is our view that the subject "housings" are a form of ceramic electrical ware within the ambit of item 535.14. Merchandise that would be covered by this item is explicitly excluded from tariff treatment under the claimed provision, item 685.90, as headnote 1(iii), part 5, schedule 6 precludes classification of ceramic electrical ware under part 5, schedule 6. This, of course, includes item 685.90 under part 5. The mandate of the headnote is unequivocal and compels this conclusion. We note that a similar conclusion was reached by the Customs Court with regard to headnote 1(i). See Border Brokerage Co. v. United States, 64 Cust.Ct. 436, C.D. 4014 (1970). We think the same result is fully warranted in the instant case.

However, appellee argues that the Explanatory Notes to Schedules 5 and 6 of the Tariff Classification Study of 1960 [2] provide the basis for a different result from that reached here. The pertinent portions to which our attention has been directed are as follows:

From the Explanatory Notes to Schedule 6, Part 5 at p. 302:

This part includes many new provisions specifically covering various electrical articles and electrical components of articles which are presently classifiable under various general tariff descriptions, "parts" provisions, and "basket" provisions usually based upon component material of chief value. The provisions often clash head-on and produce uncertain and anomalous results.

From the Explanatory Notes to Schedule 5, Part 2 at p. 95:

Item 535.14 does not embrace switches, fuses, receptacles, lamp sockets, resistors and other electrical articles which are to be connected into electrical circuitry. (These are specifically provided for in part 5 of schedule 6) * * *.

Appellee points out that lamp sockets are mentioned in the report as not being within item 535.14 but are in large part of ceramic material. Therefore, appellee argues, they are covered by item 685.90 since specifically mentioned there and, since that item provides for "parts," all parts of a lamp socket, including a ceramic part, should be classified there also. We find no inconsistency between our position and the Explanatory Notes. The quoted portion of the Explanatory Notes to item 535.14 does not refer to parts, and we note that each piece of electrical hardware enumerated therein as not being embraced by item 535.14 is a complete item arguably made up in part in many instances of ceramic material. Clearly they would be *more than* ceramic electrical ware and not excluded

2. Tariff Commission, Tariff Classification Study (1960) (published as a report to the President and the Chairman of the Committee on Ways and Means of the House and the Committee on Finance of the Senate).

from item 685.90 by the headnote even if no effect were given to the Explanatory Notes. Also, nonceramic parts of those items would not be excluded by the headnote.

Without unduly prolonging this discussion, we think that the court below committed reversible error by failing to heed the exclusionary headnote. Had it been applied, as we feel it should, there would have been no occasion for a resort to the rule of relative specificity.

The judgment of the Customs Court is therefore reversed.

Reversed.

RICH, J., dissents.