58 CCPA

The UNITED STATES, Appellant,

v.

NEW YORK MERCHANDISE CO., Inc., Appellee.

No. 5357, C.A.D. 1004.

United States Court of Customs and Patent Appeals.

Dec. 17, 1970.

———◆———

William D. Ruckelshaus, Asst. Atty. Gen., Alan S. Rosenthal, James C. Hair, Jr., Washington, D. C., for the United States.

Stein & Shostak, Los Angeles, Cal., attorneys of record, for appellee; S. Richard Shostak, Los Angeles, Cal., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and McMANUS, Judge, Northern District of Iowa, sitting by designation.

BALDWIN, Judge.

The government appeals from the decision and judgment of the United States Customs Court, First Division,[1] sustaining the protest of New York Merchandise Co. to the classification and resulting assessment of customs duty on certain goods invoiced as "6 Transistor Stuffed Animal Radios: Poodle."

The imported merchandise can be described as stuffed, plush-covered poodle dogs, about 12 inches in overall length, each containing, in a concealed, zippered compartment, a battery-powered transistor radio which is operated by control knobs protruding out from the nose and chest parts of the stuffed animal.

The Collector of Customs classified the articles under item 737.30 of the Tariff Schedules of the United States (TSUS) as stuffed toy figures of animate objects and assessed duty at 18 per cent ad valorem. In the court below, appellee claimed that the proper classification was under item 685.22 TSUS, as radios, dutiable at 12½% or, alternatively, under item 688.40, as electrical articles, not specially provided for, dutiable at 11½%. The government also asserted an alternative classification, arguing that, if the original classification were held to be incorrect, the imported articles should be held classifiable as toys under item 737.90 TSUS, to be dutied at 35%.[2] The Customs Court sustained the importer's protest and held the articles to be properly classifiable as radios.

Before the Customs Court, the importer submitted six exhibits, one of which was a representative sample of the imported merchandise, and took the testimony of three witnesses. Beyond what was elicited on cross-examination of appellee's witnesses, the government submitted no evidence. We summarize the facts thought by the lower court to have been established by the record as follows:

1. The radio portions of the imported articles constitute the component of chief value of the overall article.

2. Between 1965 and 1966, more than 140,000 of these articles were imported and sold through gift shops or department stores, where they were displayed on counters with radios and other electric articles and were advertised and sold as "novelty radios".

3. The federal excise tax applicable to radios was paid upon sale of the imported articles.

4. The wholesale price for the imported articles is approximately three times that of comparable stuffed ani-

---

1. New York Merchandise Co. v. United States, 62 Cust.Ct. 283, C.D. 3746 (1969).

2. The relevant provisions of the tariff schedules are set out below:

*Classified under:*
    Toy figures of animate objects (except dolls):
        Not having a spring mechanism:
            Stuffed:
    *    *    *    *    *    *    *    *    *    *    *    *    *
    737.30  Valued over 10 cents per inch of height ................18% ad val.

*Alternative classification claimed by government:*
    Toys, and parts of toys, not specially provided for:
    *    *    *    *    *    *    *    *    *    *    *    *    *
    737.90  Other ...........................................35% ad val.

*Classification claimed by importer:*
    Radiotelegraphic and radiotelephonic transmission and reception apparatus;
        radiobroadcasting and television transmission and reception apparatus * * :
    *    *    *    *    *    *    *    *    *    *    *    *    *
    685.22  Other ...........................................12.5% ad val.

*Alternative classification claimed by importer:*
    688.40  Electrical articles, and electrical parts of articles, not specially provided for ........................................11.5% ad val.

mals sold by the importer as toys for children.

5. While having an essentially similar appearance to such stuffed animals sold as toys, the imported articles have a plush pile which is longer than that of such toy stuffed animals and which has a tendency to fall off.

■ On the basis of all the aforestated facts but manifestly relying heavily on the sample, itself, as evidence, the Customs Court first found the imported articles to be *more than* stuffed toy figures of animate objects. In doing so, the court applied the following "tests", which were suggested in Novelty Import Co. v. United States, 58 Cust.Ct. 59, C. D. 2889 (1967):

> [T]he questions to be asked in determining whether or not a particular import is "more than" a figure or image of an animate object are these: Whether or not the inanimate portion is integrated with the animate portion; whether or not the inanimate portion is a substantial or incidental part of the whole product; and whether or not the component animate and inanimate parts are essential to the toy article and what it purports to be.

The court thereafter went on to hold that New York Merchandise Company had established that the importations are not toys but rather are "novelty radios" and thus, *eo nomine,* within the broad provision for radio broadcasting and receiving apparatus. It further concluded, in response to the importer's alternative claim, that the presence of the radio within a stuffed animal exterior does not require that the articles be regarded as *more than* radios. Based on these determinations, the Customs Court sustained the importer's protest.[3]

Our review of the opinion below has satisfied us that the considerations employed by the court in deciding that the imported articles were *more than* stuffed toy figures of animate objects were apposite, and we agree with that initial determination. Compare Cragstan Corp. v. United States, 51 CCPA 27, C.A.D. 832 (1963). The government does not seriously dispute this holding. The principal point of contention on appeal here is with the treatment by the Customs Court of the presumption of correctness attaching to the administrative decision protested.

As a result of its decision that the imported articles were *more than* figures of animate objects, the Customs Court concluded that the goods were legally precluded from the classification provision originally adopted by the Customs Bureau and that the presumption of correctness to be afforded that classification was thus overcome. In response to the government's alternate classification proposal, i. e., that the imported articles were properly classifiable as toys, the court first held that the presumption of correctness did not attach to "any other classification, even under another provision in the same tariff paragraph" (citing United States v. White Sulphur Springs Co., 21 CCPA 203, 205, T.D. 46728 (1933)), and then went on to declare:

> Absent the presumption of correctness of the classification of the imported merchandise, defendant had the burden of showing by competent proof that the merchandise was chiefly used for the amusement of children or adults. Defendant having failed to offer any evidence whatever concerning the use of the merchandise, it manifestly has not sustained its burden of proof.

The government contends that the Customs Court was in error in holding the presumption to have been overcome before it had determined that the importer had not only proved that the original classification was wrong but also that its asserted classification was correct. It is urged that the court's holding that the articles in question were in-

---

3. Both parties appear to agree with the determination by the Customs Court that each imported article constitutes an "entirety" for tariff classification purposes.

correctly classified went only to the fact that they were *more than* "figures of animate objects." The finding of the Collector that the articles were "toys" as well as "figures of animate objects", a finding which the government argues was necessarily implicit in the initial classification, must therefore still be accorded the presumption of correctness. For this reason, the government asserts that the lower court was wrong in placing on it the burden of proving that the article's chief use was for amusement,[4] and that that burden should have remained (in a negative sense, of course) with the importer. The court's holding on this point, it is urged, had the effect of sharply reducing the burden of proof actually resting on the importer, improperly shifting part of that burden to the government and thereby fatally tainting the remainder of the court's conclusions.

We are constrained to agree with the government on this issue. The rulings of the court below with regard to the application and effect of the presumption of correctness to be afforded the administrative classification of the imported goods were erroneous. The opinion of the Customs Court appears not to appreciate the dual evidentiary effect of that presumption.

In the first place, the presumption of correctness serves the useful purpose of determining the extent of the importer's burden of proof. It has long been settled law that the importer's burden does not merely go to producing sufficient evidence to support a conclusion that the original classification was wrong. Regardless of the actual correctness of that classification, the orderly administration of customs law requires that it must stand unless and until the importer submits substantial evidence establishing the propriety of an asserted alternative classification. Cf. United States v. National Starch Products Co., 318 F.2d 737, 50 CCPA 1

(1962). In other words, the presumption that the goods have been properly classified has evidentiary weight, in and of itself. The presumption is not rebutted and the burden of coming forward does not shift until the importer has submitted substantial evidence tending to prove not only that the original classification by the Collector of Customs was erroneous, *but also* that some specific alternative classification is proper. Cf. Arditi v. United States, 50 CCPA 49, C.A.D. 818 (1963). At all times, of course, the importer bears the ultimate burden of persuasion. The Customs Court may rule in his behalf only when it is satisfied that he has carried his dual burden of proof with a preponderance of the evidence on both points. See Technical Tape Corp. v. United States, 55 CCPA 38, C.A.D. 931 (1968).

One effect of the presumption of correctness, then, is that the government need not submit any evidence until the importer has come forward with substantial evidence establishing a *prima facie* case on both aspects of the dual burden of proof. Yet there is another facet to the presumption of correctness which, because of the peculiar facts of this case, appears to have been confused. The Collector is also presumed to have found *every* fact *necessary* to sustain his original classification. Novelty Import Co. v. United States, 53 CCPA 28, C.A.D. 872 (1966). The presumption of correctness therefore attaches not only to the ultimate conclusion of the Collector that the goods are properly classified in a particular category, but also to every subsidiary fact necessary to support that conclusion. A finding that the conclusion was erroneous may be compelled by disproving any one of those subsidiary facts. The presumption of correctness remains attached to the others. In this case, the original classification required a finding that the subject articles were *inter alia*, "toys". When the govern-

4. Headnote 2 to Schedule 7, Part 5, Subpart E of the Tariff Schedules, under which the Bureau classified the merchandise, states that "[f]or the purposes of the tariff schedules, a *'toy'* is any article chiefly used for the amusement of children or adults."

ment asserted the broader provision covering toys, in general, as an alternative to the original classification, it should have been permitted to rely on the presumption of correctness attaching to that subsidiary finding of the Collector. The burden of proving the contrary, therefore, was on the importer and the Customs Court was clearly wrong in placing on the government the burden of proving chief use.

The cases cited by the court, particularly the *White Sulphur Springs Co.* case, and those additional cases cited by appellee here, in support of the holding below are not controlling on this point. In those cases the issue was whether the presumption of correctness attached to alternate categories of goods which, only because of the peculiar nature of earlier tariff acts, happened to be included within the same paragraph as that under which the imported merchandise had been originally classified. In most of those cases, the alternate category proposed was not even related to the type of merchandise which the original classification had covered. In none did the requirements of the classified and proposed categories bear a relationship such as that which exists between the categories asserted by the government here. Item 737.30 of the TSUS, originally found by the Collector to encompass the subject goods, covers only a very narrow category of merchandise. Articles found to be "toy figures of animate objects", and thus included in that provision, must also necessarily be "toys," and, unless they are specifically provided for elsewhere, within the confines of item 737.90. The burden of proving that the imported stuffed animals were not toys was definitely on the importer.

■ As it turns out, however, the government must find its satisfaction in knowing that its position regarding burden of proof has been vindicated. We cannot give it any more. On the basis of the record before us, we are convinced that any error the lower court may have committed was of the harm-

less variety. We note the following statement by the Court:

But even aside from this consideration, the record clearly establishes that the importations are not essentially playthings—for children or adults—and thus do not come within the toy provision of the tariff schedules.

We agree with this holding. As the lower court later mentioned, in this case we have the situation, not entirely uncommon in "toy cases", where the probative effect of the sample imports, themselves, is such as to not only prove the original classification to have been erroneous, but also to provide a sufficient basis to establish the propriety of the asserted classification. No evidence having been submitted to rebut this *prima facie* case, the Customs Court correctly sustained the protest and its judgment is affirmed.

Affirmed.