In short, if the surface has not been "visibly" affected, the textile is not "coated".

It is quite true that the water-repellent finish has significantly affected the surfaces of the imported cotton suede fibers by making them hydrophobic; however, it is manifest from the testimonial evidence and exhibits that the finish has not *visibly* affected the surface of the fabric—indeed, the "coating" is undetectable not only to the naked eye but also under the microscope. In other words, the fact that the finish creates a water-repellent surface is entirely immaterial in the absence of any visible affect thereon. Accordingly, the imported cloth is not "coated" as that term is defined in headnote 2(a). [Emphasis quoted.]

The court is in agreement with the above interpretation of the headnote. However, the *Kaplan* decision is not controlling in the instant case. In the case at bar Dr. Rommel, called on behalf of defendant, testified the effect of the coating is visible to the naked eye. Mr. Lavoie, an import specialist, also called on behalf of defendant, testified that exhibit 2 felt stiffer. The district director, Ms. Maki, called on behalf of plaintiff while admittedly not a classification expert, testified that exhibit 2 seemed stiffer than exhibit 3. Mr. Rosenthal also testified that exhibit 2 was stiffer, heavier, and did not have frayed edges. Mr. Biedler testified that exhibit 2 was stiffer and did not have ragged edges. Defendant contends stiffer is not a visible sense, but one of feel. The court has examined exhibits 2 and 3 which are representative of the material involved. Exhibits 2 and 3 are cut from the same bolt of material, but exhibit 2 has been coated and exhibit 3 has not. The appearance of stiffness, visibly and not by feel, is quite apparent to the court. Based upon the record and the court's own examination of the material used in the manufacture of the imported parkas, the court is of the opinion that said merchandise is coated within the purview of the controlling headnote, and as such properly subject to classification under item 376.56 *supra*, as claimed.

In view of the foregoing the issue of equitable estoppel raised by plaintiff is moot. Judgment will be entered accordingly.

(C.D. 4770)

DR. EARL SASS *v.* UNITED STATES

Court Nos. R67/18018, etc.

Port of San Francisco

(Decided October 11, 1978)

*Glad, Tuttle & White (Steven W. Baker* of counsel) for the plaintiff.
*Barbara Allen Babcock,* Assistant Attorney General (*Velta A. Melnbrencis* and *Madeline B. Cohen,* trial attorneys), for the defendant.

BOE, Judge: At the trial of the above-entitled action five additional causes of action in which the plaintiff and the defendant herein are also parties, represented by Court Nos. R67/18019, R67/18020, R67/18021, R67/18022, and R67/18023, were consolidated therewith.

The merchandise involved in the instant action consisting of carved wood items including bowls, plates, utensils, trays, statues, together with straw hats, sisal rugs, beads, and other miscellaneous articles was purchased by the plaintiff in Haiti and exported therefrom between January 14, 1964, and August 10, 1964. The merchandise was entered at the port of San Francisco in 1964 upon pro forma invoices prepared and submitted by the plaintiff and containing the unit purchase price which allegedly had been paid for the respective items of merchandise in Haiti.

The merchandise was appraised by customs officials on the basis of export value at its invoiced unit value plus percentage increases designated in red on the entry papers and ranging from 100 to 700 percent, plus a prorated part of the items marked "X" for packing charges.

No dispute exists with respect to the appraisement of the merchandise in question at its export value pursuant to section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, providing:

(b) EXPORT VALUE. For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale

quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States. [19 U.S.C. 1401a(b).]

The plaintiff, however, contends that the unit purchase prices and packing charges indicated on the pro forma invoices submitted by him constitute the export value of the merchandise in question.

The facts relevant to the plaintiff's asserted claim disclose that while the owner-operator of certain book stores in San Francisco, Calif., he visited Port-au-Prince, Haiti, in December 1963, as a tourist and purchased miscellaneous woodenware articles of a total valuation of about $50. The popular reception received by these articles in San Francisco caused the plaintiff to engage in the business of importing assorted articles of merchandise from Haiti for sale in his stores. The first shipments imported by plaintiff in 1964 for commercial sale comprise the six entries included in this consolidated action. The plaintiff continued to visit Haiti for about 2 months of each year through 1968 for the purpose of buying merchandise for subsequent importation and sale in the United States. Except for beads which were purchased by his close friend and associate, Margaret Hale, all of the merchandise in question was purchased by the plaintiff and packed by him or under his supervision for shipment to the United States.

From the evidence submitted, it appears that all of the merchandise purchased by the plaintiff was carved, molded, woven or made, as the case might be, by native laborers who, in so doing, worked together in groups or communes. The selection and purchase of a majority of the merchandise was made by the plaintiff in the iron market, a common market place at which produce, fruits, poultry as well as merchandise similar to that imported by plaintiff were displayed and sold by vendors either individually or in groups from their respective partitions or stalls. Additional purchases of merchandise were made by the plaintiff from merchant-vendors outside of the airport as well as from merchant-vendors who solicited him at a warehouse which he had rented. The testimony of the plaintiff represented the merchandise purchased by him to be of an inferior quality to articles of merchandise of similar identity and character sold in various, select locations in Haiti. In illustration of the quality of the imported articles in question, the plaintiff testified that such merchandise included items of woodenware which were infested with termites or which subsequently cracked because of green wood, sisal rugs and mats whose colors would fade, and beads whose strings

would break. Plaintiff's collective exhibit 1, consisting of 39 articles, was represented to be illustrative only of the imported merchandise in question and of the defects found or occurring to the merchandise imported by the plaintiff during the period 1964–68. None of the items comprising plaintiff's collective exhibit 1 could be identified, however, by the plaintiff as having been among the articles contained in the six entries comprising the subject matter of the instant consolidated action.

No prices were listed or displayed at any time or at any place with respect to the merchandise in question. Each purchase by the plaintiff was made after the vendor orally quoted a price per unit or per dozen lots. Inability to understand or speak the language of the other prevented the plaintiff and the native vendors from engaging in a conversation more extensive than a quotation of price. Although the price for the merchandise in question purchased by the plaintiff in the iron market was the same price offered to and paid by tourists who may have then been present, the plaintiff was unaware of the price paid for any other purchases for similar merchandise either in individual units or wholesale lots for exportation to the United States during the period of time in question.

The appraised valuation of the merchandise in question in the instant action by the customs officials bears a statutory presumption of correctness having evidentiary weight in and of itself. Upon the plaintiff, therefore, rests the dual burden of establishing that the determination of the customs officials was erroneous and that the dutiable value claimed by him is proper and correct. *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970); *Novelty Import Co., Inc.* v. *United States*, 53 CCPA 28, C.A.D. 872 (1966). Our appellate court has stated in the case of *Kobe Import Co.* v. *United States*, 42 CCPA 194, at 198, C.A.D. 593 (1955):

> However erroneous the appraiser's action may have been in valuing the merchandise, it was incumbent upon appellant seeking to prove the correctness of a different statutory export value to meet every material issue in the case, and hence establish every element of that value in strict compliance with the dictates of section 402(d), *supra*. Failing to sustain this burden of proof, the value fixed by the appraiser remains in full force and effect.

In contesting the correctness of the appraised valuation determined by the customs officials and in the effort to establish his asserted dutiable value, the plaintiff offered the pro forma invoices prepared by him containing the price of merchandise which he allegedly paid. The court files, which have been made a part of this record, include miscellaneous receipts purportedly indicating an acknowledgment of a sum of money designated thereon. No effort, however, has been

made to establish any relationship between the individual receipts and the invoice prices, the merchandise enumerated on said invoices or the vendors of the merchandise in question. The invoices prepared by the plaintiff do not alone supply the statutory requisites necessary to establish value. As our appellate court has stated in the case of *Kobe Import Co.* v. *United States, supra,* at 199:

> * * * it is nevertheless clear that an invoice cannot of itself establish the statutory elements necessary to constitute export value. The price stated in such invoice may or may not be in conformity with that valuation contemplated by the statute. It is a matter of proof and not of suspicion. * * *

From the remaining evidence submitted by the plaintiff, therefore, it is necessary to consider whether the determination of the customs officials has been proved erroneous and whether, as our appellate court has stated, every element of export value in strict compliance with the requirements of the statute has in turn been met.

The plaintiff seeks to establish that the merchandise in question was of inferior quality to other merchandise sold in Haiti at a higher price and that in normal practice sales of such merchandise occurred in public markets such as the iron market and/or the plaintiff's warehouse. Relying on the rationale enunciated in the case of *Chr. Bjelland & Co., Inc.,* v. *United States,* 52 CCPA 38, C.A.D. 855 (1965), the plaintiff urges that only the sales of the merchandise at the iron market and at his warehouse should be considered within the purview of the statutory requirement "in the ordinary course of trade" and that, accordingly, sales of better quality merchandise, although of similar identity, made at other business establishments should not be used as a comparison.[1] In an apparent effort to place himself in the position of the principal importer from Haiti during the period of time in question, the plaintiff introduced in evidence exhibit 8 consisting of a documented chart in which the importation of only woodenware articles by the plaintiff in 1964 is compared to the total amount of importations of such woodenware items from Haiti in said year. Neither exhibit 8 nor other evidence submitted serves to justify the application of the *Chr. Bjelland* rationale.

An examination of exhibit 8 reveals that the plaintiff could not be considered a single major importer even with respect to the restricted character of the articles compared. It further will be noted that no effort was made to include in such comparative statistics additional merchandise imported by the plaintiff consisting of rugs, hats, pictures,

---

[1] In the *Bjelland* case, our appellate court carefully pointed out that the only class or kind of merchandise involved therein were two kinds of fish (sardines and kipper snacks) of which the appellant therein was the single largest importer. Accordingly, a determination of export value was held to be properly restricted solely to such sales and not the sales of all fish.

drums, beads, and other miscellaneous articles. Nor were the sales of merchandise in question in the instant action restricted to a limited number of items. The evidence submitted indicates that a wide variety of articles were purchased in multiple and differing assortments, in large numbers or quantities, as in the case of beads, as well as in job lots and in mixed groups. No evidence, however, has been submitted to establish any price at which merchandise of alleged inferior quality, whether sold or offered for sale at a public market or elsewhere, and whether in large quantities, in job lots and mixed groups and assortments " * * * [was] freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, * * * " as required by the statute.[2] The only evidence remotely pertaining to the uniformity of price for merchandise freely offered for sale to and paid by other purchasers for articles similar to the merchandise purchased by the plaintiff related to the purchases made by tourists at the iron market. Such purchases by tourists were restricted to individual articles and did not consist of wholesale or job lot quantities. Nor were such sales to tourists made for the purpose of exportation to the United States. Sales in the domestic market of the exporting country cannot be used in the determination of export value. *J. L. Wood* v. *United States*, 62 CCPA 25, C.A.D. 1139, 505 F.2d 1400 (1974).

The admissions of the plaintiff might be deemed as a personal acknowledgment of the inability to meet the essential elements required by the statute to establish export value. He acknowledged that he was not aware of the merchandise which may have been sold to other persons nor the price paid therefor. He did not recall any wholesalers purchasing merchandise, however, subsequently, his testimony referred to a wholesaler who had not made purchases in the manner that the plaintiff's purchases were made.[3] In sum, the record reveals only the amount the plaintiff allegedly paid for the merchandise in question and is completely silent as to the amount other importers paid for similar merchandise or for the merchandise purportedly of a higher quality. The requirements of proof of export value are exact and demanding. The statutory elements necessary to establish such value cannot be supplanted by judicial conjecture.

It appears from the court files relating to the entry of the merchandise in question that the actual content of the boxes in which the merchandise in question was packed was in variance with and contained articles in excess of the articles enumerated on the packing lists sub-

[2] 19 U.S.C. 1401a(b).
[3] Transcript, p. 67.

mitted by the plaintiff. A reconstructed invoice of the actual articles of merchandise imported was required to be performed by the customs officials. In so doing, it can well be recognized that the appraisement of the merchandise in question necessarily consisted of a more exacting examination than might otherwise have occurred. In view of the foregoing to discard the considered determination of the customs officials in the appraisement of the specific articles of merchandise at the time of its importation for the questionable representations of the plaintiff as to the amount, quality and condition of the merchandise made at the trial of this action would do violence to the presumption of correctness with which the appraisement of the merchandise in question is clothed.

More than cursory notice should be given to the fact that a period of 14 years has elapsed between the entry of the merchandise in question and the trial of this consolidated cause of action. Whether a more prompt presentation of this case would have afforded plaintiff's counsel the opportunity to submit more clear, convincing and material evidence in support of plaintiff's claim might be conjectural. Needless to say, however, the prolonged passage of time has neither served to aid the plaintiff in the burden of proof incumbent upon him, nor to aid this court in assessing the credibility of the witnesses and the testimony presented herein.

From the testimony and the record submitted, this court, therefore, concludes that the plaintiff neither has established that the appraised valuation by the customs official was erroneous, nor that the dutiable value of the merchandise in question asserted by him is proper and correct as the export value thereof. The cause of action is dismissed.

Let judgment be entered accordingly.