**Slip Op. 09-3**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

_____
                                                        :
OUTER CIRCLE PRODUCTS,                                   :
                                                        :
                    Plaintiff,                          :
                                                        :
                    v.                                  :   Court No.: 05-00678
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
                    Defendant.                          :
                                                        :
_____                :


**Held:**  Plaintiff's motion for summary judgment is denied.  Summary judgment is granted in favor of the Defendant.


                                      Dated: January 9, 2009

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, (Curtis W. Knauss, Robert B. Silverman, Robert F. Seely, Edward B. Ackerman, and Steven P. Florsheim) for Outer Circle Products, Plaintiff.

Gregory G. Katsas, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office (Aimee Lee and Marcella Powell); Alexander Vanderweide, Civil Division, Commercial Litigation Branch, United States Department of Justice; Of counsel: Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, for the United States, Defendant.

**OPINION**

**TSOUCALAS, Senior Judge:**  This matter is before the Court on cross-motions for summary judgment pursuant to USCIT R. 56. Plaintiff Outer Circle Products ("Plaintiff" or "Outer Circle") challenges the classification of its merchandise by the United

States Bureau of Customs and Border Protection ("Customs") under the 1997 Harmonized Tariff Schedule of the United States ("HTSUS").[1] Plaintiff maintains that the merchandise is properly classified under subheading 3924.10.50, HTSUS, as "Tableware, Kitchenware . . . of plastics: Other." Customs cross-moves for summary judgment stating that the Court should sustain its classification under HTSUS subheading 4202.92.90 as "bottle cases . . . [w]ith outer surface of sheeting of plastic or of textile materials: Other."

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (1994), which provides the Court "shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." Section 515 of the Tariff Act, 19 U.S.C. § 1515 (1994), details the process by which Customs modifies and performs administrative review of its decisions and "provides for the allowance or denial of protests filed pursuant to section 514 of the Tariff Act of 1930." Lowa, Ltd. v. United States, 5 CIT 81,

---

[1] The United States Customs Service was renamed the Bureau of Customs and Border Protection of the Department of Homeland Security, effective March 1, 2003. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 403, 116 Stat. 2178 (2002); Reorganization Plan for the Department of Homeland Security, H.R. Doc. No. 108-32 (2003).

84, 561 F. Supp. 441, 444 (1983) (citations omitted).


**STANDARD OF REVIEW**

On a motion for summary judgment, the Court must determine whether there are any genuine issues of fact that are material to the resolution of the action. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material if it might affect the outcome of the suit under the governing law. See id. Accordingly, the Court may not decide or try factual issues upon a motion for summary judgment. See Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988). When genuine issues of material fact are not in dispute, summary judgment is appropriate if a moving party is entitled to judgment as a matter of law. See USCIT R. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).


**DISCUSSION**

**I. Background**

This dispute is ripe for summary judgment and the relevant facts are outlined below. At issue is the proper classification of the subject merchandise, which was imported through the Port of Chicago, Illinois in June 1997. Plaintiff purports the merchandise to be bottle and jug wraps "designed, manufactured and marketed for

the primary purpose to contain beverages and keep them cool." Mem. Supp. Pl.'s Mot. for Summ. J. ("Pl.'s Brief") at 3. Each of the items was imported in finished condition without the bottles or jugs attached. See Pl.'s Statement of Material Facts Not in Issue ¶ 7. The containers were designed to accommodate either a one liter, half gallon, or two gallon plastic bottle or jug, and were fitted to the size and shape of the bottle or jug they were designed to carry. See Pl.'s Brief at 2. Zippers placed on either the side or top allowed for greater plasticity of container to bottle or jug. See id. at 3. The subject merchandise was constructed of a foam portion measuring approximately three millimeters in thickness covered on both sides by a plastic sheeting, or in the alternate, covered on the inside by a plastic coated textile fabric and the outside by plastic sheeting. See Complaint ¶ 5; Def.'s Statement of Undisputed Material Facts ¶ 5. Sewn on to each container was a fabric strap designed to promote the product's portability. See Pl.'s Brief at 3. After importation but prior to resale, the appropriate plastic bottle or jug was inserted into each container. See id. at 3. The finished product was then marketed as possessing insulative properties, and sold to large retail franchises under the trademark label "Arctic Zone." Id. at 3,5.

Upon liquidation of the entries, the merchandise was classified by Customs under subheading 4202.92.90, HTSUS, and

assessed the schedule duty rate of 19.3% ad valorem.  The relevant

portions of Heading 4202 are as follows:

4202        Trunks, suitcases, vanity cases, attache cases,
            briefcases, school satchels, spectacle cases,
            binocular cases, camera cases, musical instrument
            cases, gun cases, holsters and similar containers;
            traveling bags, toiletry bags, knapsacks and
            backpacks, handbags, shopping bags, wallets,
            purses, map cases, cigarette cases, tobacco
            pouches, tool bags, sports bags, bottle cases,
            jewelry boxes, powder cases, cutlery cases and
            similar containers, of leather or of composition
            leather, of sheeting of plastics, of textile
            materials, of vulcanized fiber or of paperboard, or
            wholly or mainly covered with such materials or
            with paper:

                 Other:

4202.92        With outer surface of sheeting of plastic or of
               textile materials:

4202.92.90          Other                                 19.3%


Outer Circle protested Customs' classification of the subject

merchandise, asserting that Customs should have classified the

imports under subheading 3924.10.50, HTSUS with a dutiable rate of

3.4% ad valorem.  The pertinent parts of Heading 3924 are as

follows:


3924        Tableware, kitchenware, other household articles
            and toilet articles, of plastics:

3924.10          Tableware and kitchenware:

3924.10.50          Other                                 3.4%

Customs denied Plaintiff's protest and a timely summons was filed with this Court. All liquidated duties, charges and exactions for the subject entries were paid prior to the commencement of this action. Outer Circle seeks reliquidation of the subject imports and a full refund of duties paid together with interest, as provided by law. See id. at 11.

Defendant argues that the entries were properly classified under subheading 4202.92.90, HTSUS "because the merchandise is identified eo nomine under heading 4202, HTSUS." Mem. in Opp'n to Pl.'s Mot. for Summ. J. & in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Brief") at 4. Customs further argues that the imported merchandise does not fall within the scope of Chapter 39, HTSUS as a container for food or beverages because "Outer Circle's bottle and jug cases clearly do not store food or beverages." Id. at 13.

## II. Arguments of the Parties

### A. Plaintiff's Arguments

Outer Circle maintains that Custom's wrongly liquidated the subject merchandise under subheading 4202.92.90 as other items similar to those described by name in Heading 4202, HTSUS rather than its appropriate classification as other household articles of plastics under Heading 3924, HTSUS. See Pl.'s Brief at 6. Plaintiff premises its argument on two prior decisions of this Court and the United States Court of Appeals for the Federal

Circuit ("CAFC"). Outer Circle contends that because the subject imports are substantially similar to the products examined in <u>SGI, Inc. v. United States</u>, 122 F.3d 1468 (Fed. Cir. 1997) and <u>Dolly, Inc. v. United States</u>, 27 CIT 1597, 293 F. Supp. 2d 1340 (2003), this Court is bound by these previous legal determinations. <u>See</u> <u>id.</u> at 2-4. In both cases, the Courts reviewed the scope of HTSUS Headings 4202 and 3924, and concluded that the correct classification for the merchandise at issue was HTSUS Heading 3924. Outer Circle maintains that because its merchandise was "designed to contain and transport beverages like the products in <u>SGI</u>, they should also be classified under Heading 3924, HTSUS." <u>Id.</u> at 3. Plaintiff also points to the rule of <u>ejusdem generis</u> which was employed by both the <u>SGI</u> and <u>Dolly</u> Courts to determine the scope of the two competing provisions.[2] Outer Circle argues that when applying the rule of <u>ejusdem generis</u> to "the products in this case, it is clear that the wraps also have the essential characteristics of the exemplars for Heading 3924, HTSUS - they preserve and store beverages." <u>Id.</u> at 4.

Plaintiff cites to the HTSUS General Rules of Interpretation

---

[2] Under the rule of <u>ejusdem generis</u>, which means "of the same kind," where the enumeration of specific things is followed by a general word or phrase, the general word or phrase will be interpreted to include things of the same kind as those specified. <u>See</u> <u>Totes, Inc. v. United States</u>, 69 F.3d 495, 498 (Fed. Cir. 1995) (citing <u>Sports Graphics, Inc. v. United States</u>, 24 F.3d 1390, 1392 (Fed. Cir. 1994).

("GRI")[3] and the Harmonized Commodity Description and Coding System Explanatory Notes ("Explanatory Notes"),[4] as additional support for its position.  More specifically, GRI 1 states in part that for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes. See id. at 4-5.  Outer Circle contends that the subject imports are correctly classified under HTSUS Heading 3924 because they are used for the storage and preservation of beverages as contemplated by such heading.  See id. at 5.  According to Plaintiff, the Explanatory Notes for Heading 3924 specifically provide for "food storage containers" which is "exactly the use for which the bottle and jug wraps were designed and manufactured."[5]  Id. at 7. Moreover, Plaintiff suggests that the inclusion of the term "luncheon boxes" in the Explanatory Notes of Heading 3924 "reflects the likelihood that such boxes would be capable of keeping the

_____

[3] Classification of goods under the HTSUS is governed by the General Rules of Interpretation and the Additional Rules of Interpretation ("ARI"). See Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998).

[4] The Explanatory Notes constitute the official interpretation of the Harmonized Commodity Description and Coding System. While neither legally binding nor dispositive, they provide a commentary on the scope of each heading of the HTSUS and are generally indicative of its proper interpretation. See Van Dale Indus. v. United States, 18 CIT 247, 251 n.2 (1994).

[5] The Court notes that the term "food storage containers" was not included in the Harmonized Commodity Description and Coding System Explanatory Notes until January 2000, almost three years after the subject imports were entered.

contents warm or cool." Id. (citing SGI, 122 F.3d at 1473). Outer Circle posits that because the subject entries also maintain a desired temperature for beverages, they fall within the scope of Heading 3924. See id.

Next, Plaintiff argues that the subject imports are improperly classified under HTSUS Heading 4202 because they do not share any "common physical characteristics or a unifying purpose" with the articles identified eo nomine therein. Id. at 8. Namely, the exemplars listed under Heading 4202 do not contemplate the storage or preservation of food or beverages. See id. Plaintiff relies on the CAFC's holding in SGI which determined that the scope of Heading 4202 did not "include containers that organize, store, protect, or carry food or beverages." 122 F.3d at 1472. Outer Circle further notes that the term "insulated food or beverage bags" was not added to HTSUS Heading 4202 until several years after the subject merchandise was entered.[6] This, according to Plaintiff, is recognition of the fact that, prior to the change, such items were excluded from the scope of Heading 4202. See Pl.'s Brief at 9. Therefore, classification of the subject imports under Heading 4202 is inconsistent with the essential characteristics of the exemplars listed therein which is to organize, store, protect and carry various items. See id. at 8.

---

[6] HTSUS Heading 4202 was expanded to include "insulated food or beverage bags" in December 2001. See Proclamation No. 7515, 66 Fed. Reg. 66549, 66,619 (Dec. 18, 2001).

### B.   Defendant's Arguments

In response, Customs argues that the subject merchandise is properly classified under HTSUS Heading 4202 because "bottle cases" are specifically enumerated therein, and that goods classified as such eo nomine fall within the scope of such heading.[7] See Def.'s Brief at 9.  Defendant also relies on GRI 1 and its general mandate that classification be determined according to the terms of the headings, section and chapter notes.  See id. at 7.  Because Note 2(ij) of Chapter 39 precludes "containers of heading 4202" from its coverage, Defendant claims that the subject imports are "specifically excluded from classification under heading 3924, HTSUS."  Id. at 8.  As evidence of the scope and meaning of the term "bottle cases," Defendant points to the language of the statute itself, and contends that the specific identification of the items enumerated in Heading 4202 is a clear indication that its coverage extends to "containers or cases which are designed to hold specific items which give them their names."  Id. (quoting DRI Indus., Inc. v. United States, 11 CIT 97, 102, 657 F. Supp. 528, 533 (1987)).  While acknowledging that none of the provisions of the HTSUS define the term "bottle cases," Defendant relies on

---

[7] Absent contrary legislative intent, an eo nomine classification provision is one which describes a commodity by a specific name, usually one that is well known in the trade or to commerce. See Nidec Corp. v. United States, 68 F.3d 1333, 1336 (Fed. Cir. 1995); Clarendon Marketing Inc. v. United States, 144 F.3d 1464, 1467 (Fed. Cir. 1998).

established case law for the proposition that where a tariff term is not statutorily defined, such terms are construed in accordance with their common and popular meaning.  See id. at 9-10. Therefore, Defendant looks to the term's dictionary meaning as "a covering or receptacle for holding bottles."  Id. at 10.

Customs disputes Plaintiff's categorization of the subject imports  as insulated food or storage containers, and asserts that "Outer Circle's entire argument hinges on the incorrect premise that its bottle and jug wraps preserve and store food or beverages."  Id. at 13.  Inasmuch as merchandise is classified according to its condition when imported, the subject containers were entered without the plastic bottles or jugs.  Defendant claims that because the containers are incapable of storing food or beverages in the absence of the related bottles or jugs, Plaintiff's classification scheme is ill-conceived.  See id. at 22. The imports are merely conduits for the encasement and transport of the associated bottles or jugs, which further contain the actual food or beverages.  See id. at 13.

In addition, Customs performed its own tests of the insulative properties of the subject merchandise, and presents findings that call into question the efficacy of the goods' insulative capabilities.  See id.  According to Defendant, the results of these laboratory tests demonstrate that "Outer Circle's imported articles have no material insulative properties, and therefore

cannot properly preserve or store food or beverages."[8] See id. at 16. Since they cannot be considered insulated food or beverage bags, any attempt at classification of the subject merchandise under HTSUS Heading 3924 is misplaced. See id. at 23.

In response to Outer Circle's argument that the term "insulated food or beverage bags" was not added to HTSUS Heading 4202 until years after its merchandise was imported, Defendant points out that while this may be true, the term "bottle cases" has always been an eo nomine provision in Heading 4202. See id. at 15. This fact notwithstanding, Customs maintains that the legislative history of Heading 4202 demonstrates that "insulated food or beverage bags" were always meant to fall within the heading's

---

[8] Customs tested the one liter and half liter cases by measuring the temperature of liquids within bottles placed into the cases against liquids within bottles placed into a brown paper bag and liquids within bottles not placed into any container, i.e. exposed to open air. At the end of a four hour period the difference in the temperature of a liquid insulated by the half liter container and that of a liquid insulated by the brown paper bag was 0.4°F. Likewise, the difference in the temperature of the liquid insulated by the one liter case and that of the brown paper bag over the same four hour period was 1.1°F. The differences recorded for the open air containers were similarly minimal. See Def.'s Brief, Exhibit A.

Plaintiff tested the subject merchandise on two separate occasions. The first test, performed in January 2008, compared the temperature of a liquid contained within a bottle left exposed to open air against a liquid within a bottle placed into one of the subject containers. The second test, conducted in August 2008, measured the temperature of a bottled beverage in three states: 1) wrapped in a subject wrap; 2) unwrapped; and 3) wrapped in a paper bag. Plaintiff argues that these tests demonstrate as incorrect, the conclusions drawn by Customs in its laboratory tests. See Pl.'s Brief, Exhibit 8; Pl.'s Resp. to Def.'s Cross-Mot. for Summ. J. ("Pl.'s Resp."), Exhibit 1.

coverage. See id. In adopting the amendments to the text of Heading 4202, which included the addition of the term "insulated food or beverage bags," the Harmonized System Committee of the World Customs Organization stated that the "new texts involved no change in scope." Id.

Customs refutes Outer Circle's contention that judicial precedent is controlling with regard to this classification. Defendant maintains that the circumstances in the cases on which Plaintiff relies are distinguishable from those present here. See id. at 17. In particular, the CAFC's holding in SGI is predicated on the application of the subject merchandise as one for the storage of food or beverages. Moreover, the physical characteristics of Plaintiff's bottle and jug containers differ markedly from the merchandise at issue in SGI. See id. For example, whereas the imports in SGI were capable of storing both food and beverages, Plaintiff's merchandise is designed to store a single bottle or jug. See id. Defendant concludes, that because the Plaintiff has "failed to produce any competent evidence that its merchandise involves food or beverage storage," the holding of SGI is not controlling for purposes of this proceeding. Id. at 18.

Defendant further contests, as inapplicable to the underlying action, the CAFC's holding in Dolly. Customs alleges that, as was the case in SGI, the physical composition of subject merchandise differs considerably from Outer Circle's bottle and jug

containers.[9]  See id. at 19.  The merchandise at issue in Dolly was found to have a specific primary purpose of "transporting and storing infant and toddler food and beverages at a desired temperature over a period of time."  Id. (quoting Dolly, 27 CIT at 1605, 293 F. Supp. 2d at 1346).  Defendant claims that because the subject imports at issue here are "bottle cases," they are not adequately comparable to the articles examined in Dolly.  See id. Furthermore, the Court in Dolly relied on the rule of ejusdem generis to determine the appropriate tariff classification, which was contingent upon an examination of dissimilar merchandise, namely food and beverage containers.  See id. at 19-20.  Therefore, the conclusions the Court reached in Dolly are not relevant to the proper classification of the items in the present action.  See id. at 21.

Finally, Customs argues that the subject imports are not specifically described by the exemplars listed under HTSUS subheading 3924.10, nor are they similar in any material way.  See id. at 22.  More to the point, each of the exemplars in subheading 3924.10 are themselves used for the containment of food or beverages whereas Outer Circle's products merely secure bottles and

_____

[9] Customs observes that the insulative foam layer in the merchandise in both SGI and Dolly were significantly more dense than Plaintiff's imports. It is Defendant's contention that the degree to which these items differ make the articles in SGI and Dolly inappropriate for comparison to Outer Circle's bottle and jug containers. See Def.'s Brief at 19.

jugs. See id. at 22-23.


## III. Analysis

### A. Motion for Summary Judgment

Determining whether imported merchandise was classified under the appropriate tariff provision entails a two-step process. See Bausch & Lomb, Inc., v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998). First, the proper meaning of specific terms in the tariff provision must be ascertained. See id. Second, determine under which of the properly construed tariff terms the subject merchandise falls. See id. Interpreting the proper meaning of terms is a question of law, while determining whether the item fits within such meaning is a question of fact. See Avenues In Leather, Inc. v. United States, 423 F.3d 1326, 1330 (Fed. Cir. 2005) ("Avenues III"). While the second step, viewed as focusing on the particular merchandise and where it fits into the statutory scheme, is deemed a question of fact, a conceptual dilemma arises in its application. If the second step in the analysis is adjudged a question of fact, no party would ever stipulate to their adversary's classification as being factually correct, "since 'to do so would be to stipulate oneself out of court.'" Bausch & Lomb, Inc., 148 F.3d at 1365 (quoting Bausch & Lomb, Inc. v. United States, 21 CIT 166, 167, 957 F. Supp. 281, 282 (1997)). This quandary becomes especially acute in decisions on summary judgment.

Because the inquiry on such motions is whether a "genuine issue as to any material fact" exists, USCIT R. 56(c), a court would be precluded from rendering summary judgment in such instances. Presently, the parties offer differing characterizations of the subject merchandise.  Yet, they both agree that there are no material facts in dispute, and that the matter is ripe for summary judgment.  Therefore, the question before the Court is whether the facts on which the parties disagree rise to the level of material facts so essential to a claim or defense embodied in the summary judgment motion.  The Court finds that they do not.

In the event there is a real dispute as to the facts, it initially must be determined whether the facts at issue are material.  A dispute as to an immaterial fact does not preclude summary judgment.  See Houston North Hosp. Properties v. Telco Leasing, Inc., 688 F.2d 408, 410 (5th Cir. 1982).  While there is no established standard which governs the question of what constitutes a material fact, the courts have held that a fact is material "if it tends to resolve any of the issues that have been properly raised by the parties." Allied Int'l v. United States, 16 CIT 545, 548, 795 F. Supp. 449, 451 (1992) (quoting 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725 at 93-95 (2d ed. 1983)).  Summary judgment thus may be appropriate in a Customs classification case "when there is no genuine dispute as to the underlying factual issue of exactly

what the merchandise is."  <u>Bausch & Lomb</u>, 148 F.3d at 1365. Whereas Outer Circle categorizes its imports as "insulated food or beverage containers," <u>see</u> Pl.'s Brief <u>passim</u>, Customs applies the designation "bottle cases" to those same items.  <u>See</u> Def.'s Brief <u>passim</u>.  The disagreement over the subject imports' proper nomenclature, however, is more a byproduct of the parties' preferred classification schemes.  Both parties agree on the basic physical composition of the imported merchandise.  <u>See</u> Pl.'s Statement of Material Facts Not in Issue ¶¶ 4-6; Pl.'s Resp. to Deft.'s Statement of Undisputed Material Facts ¶ 1; Def.'s Statement of Undisputed Material Facts ¶ 5; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue ¶¶ 4-6.  What remains in dispute is the significance of the items' purported insulative capabilities.  This, however, is not relevant to the Court's inquiry.  In determining under what tariff provision the subject imports should properly fall, the Court's focus must be on "whether food or beverage is involved."  <u>SGI</u>, 122 F.3d at 1472.  While the insulative properties of the subject merchandise may be indicative of an ability to store beverages at a desired temperature, it is not legally dispositive of the products' ability to store or transport beverages in general.  Thus, the insulative nature of the imports is not a fact that tends to resolve any of the issues properly raised by the parties, i.e., whether food or beverages are being stored or transported.  Therefore, the Court agrees with the

parties, that there are no disputed material issues of fact to be resolved by trial in the instant matter and disposition by summary judgment is appropriate. See Pl.'s Brief at 7; Def.'s Brief at 4-5.

### B.    Presumption of Correctness

Relying on section 2639(a)(1) of title 28 of the United States Code, Customs argues that the agency's classification decision is presumed to be correct with the burden of overcoming this presumption resting with Plaintiff.[10]   See Def.'s Brief at 5. Customs cites to a Court of Customs and Patent Appeals decision, United States v. New York Merchandise Co., Inc., 58 CCPA 53, 435 F.2d 1315 (1970), for the proposition that this presumption extends to its decision as a whole, including purely legal portions of the determination.   See id. at 6.   The Court finds this argument unavailing.  Although the presumption of correctness carries force on any factual components of a classification decision, the situation is quite different with respect to pure questions of law. See Universal Electronics, Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997). Questions of law, such as the proper

---

[10] The relevant portions of the statute read as follows: Except as provided in paragraph (2) of this subsection, in any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision. 28 U.S.C. 2639(a)(1).

interpretation of a particular tariff provision, "lie within the domain of the courts." Id. Moreover, Customs' understanding of section 2639(a)(1) is inconsistent with established judicial precedent. The statutory presumption of correctness is irrelevant where there is no factual dispute between the parties. See Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995); Rollerblade, Inc. v. United States, 112 F.3d 481, 484 (Fed. Cir. 1997). Here, the parties filed cross-motions for summary judgment and agree that there are no disputed issues of material fact. As noted above, none of the pertinent characteristics of the merchandise are in dispute, and thus the sole issue is a matter of properly construing the relevant tariff provisions to determine whether the scope of those provisions are broad enough to encompass the subject imports. Therefore, the presumption of correctness does not apply.

### C. **Stare Decisis**

Outer Circle urges this Court to find in its favor, in part, on the doctrine of stare decisis. Plaintiff points out that the same two provisions of the HTSUS at issue here were examined by the Federal Circuit in SGI. See Pl.'s Brief at 2. Specifically, the scope of Heading 4202 was determined not to include the soft-sided cooler bags at issue in SGI, and that the proper classification for these products was under Heading 3924. The Court further held that the common characteristics or unifying purpose of the exemplars

listed in Heading 3924, was their capacity to store food and beverages. See SGI, 122 F.3d at 1472. Thus, according to Plaintiff, if the Court agrees with the facts alleged by Outer Circle, i.e., that the subject wraps were designed to carry beverages, then it is bound by the holding in SGI. See Pl.'s Brief at 2 n. 1.

Stare decisis essentially "makes each judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision." Avenues III, 423 F.3d at 1331 (quoting Mendenhall v. Cedarapids, Inc., 5 F.3d 1557, 1570 (Fed. Cir. 1993)). Plaintiff is correct in its assessment of the effects of this previous CAFC holding, as this determination relates to the scope of HTSUS Headings 3924 and 4202 - questions of law. Because the doctrine of stare decisis applies only to legal issues and not issues of fact, this Court is burdened by the previous holding in SGI only to the extent that such issues apply. The determination of whether the merchandise at issue comes within the description of either HTSUS Heading 3924 or 4202, however, is a question of fact. Therefore, the classification of soft-sided cooler bags in SGI is not stare decisis to the classification of the subject imports in this case.

### D. HTSUS Classification

The parties' remaining arguments are directed to the issue of whether the properly interpreted scope of HTSUS Heading 4202 or

3924 encompasses Outer Circle's imported bottle containers.

As previously noted, the determination as to the proper classification of imported merchandise, is directed by the GRI and ARI of the HTSUS. See Orlando Food Corp., 140 F.3d at 1439. The HTSUS is organized by headings, each of which has one or more subheadings. Whereas the headings set forth general categories of merchandise, the subheadings provide a more particularized taxonomy of the goods within each category. Under GRI 1, the HTSUS headings, as well as relative section or chapter notes, govern the classification of a product. See GRI 1. Only after a court determines that a product is classifiable under the heading should it look to the subheadings to find the correct classification for the merchandise. See Orlando Food Corp., 140 F.3d at 1440. As Customs points out, Note 2(ij) to Chapter 39 provides that the chapter "does not cover . . . trunks, suitcases, handbags or other containers of heading 4202." Note 2(ij), Chapter 39, HTSUS (1997 ed.). Thus, the Court must first determine whether the containers are prima facie classifiable under Heading 4202. If the Court so concludes, the bags are precluded from classification under Heading 3924.

Heading 4202 is structured as a list of exemplars followed by the general term "similar containers." Customs argues that the subject imports are classifiable under Heading 4202 because they are encompassed by the listed exemplar "bottle cases." See Def.'s

Brief at 9. The tariff term "bottle cases" is an <u>eo</u> <u>nomine</u> provision under Heading 4202, as it describes the merchandise by name. An <u>eo</u> <u>nomine</u> designation, without limitation or contrary legislative intent, is construed according to its common and commercial meanings, which are presumed to be the same. <u>See</u> <u>Carl Zeiss, Inc. v. United States</u>, 195 F.3d 1375, 1379 (Fed. Cir. 1999). As the term "bottle cases" is not specifically defined in the HTSUS or in the relevant legislative history, it is necessary for the Court to determine, as a matter of law, the common and commercial meaning of the term to decide whether Outer Circle's merchandise can be classified as such. In so doing, the Court may rely upon its own understanding of the term, and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources. <u>See</u> <u>id.</u> (citing <u>Baxter Healthcare Corp. of P.R. v. United States</u>, 182 F.3d 1333, 1337-1338 (Fed. Cir. 1999). A party who argues that a tariff term should not be given its common or dictionary meaning must prove that it has a different commercial meaning that is definite, uniform, and general throughout the trade. <u>See</u> <u>Rohm & Haas Co. v. United States</u>, 727 F.2d 1095, 1097 (Fed. Cir. 1984).

It is well established that an <u>eo</u> <u>nomine</u> provision, such as 4202.92.90, HTSUS, includes all forms of the named article. <u>See</u> <u>National Advanced Systems v. United States</u>, 26 F.3d 1107, 1111 (Fed. Cir. 1994); <u>Hasbro Indus., Inc. v. United States</u>, 879 F.2d

838, 840 (Fed. Cir. 1989); Nootka Packing Co. v. United States, 22 CCPA 464, 470 (1935); Sabritas v. United States, 22 CIT 59, 63, 998 F. Supp. 1123, 1127 (1998).  By any measure, application of this principle to the term "bottle cases" would cast a wide net, and thus would appear to encompass Outer Circle's imports.  However, the Court is not writing on a clean slate here.  The CAFC has already determined that the scope of Heading 4202 does not include containers that organize, store, protect or carry food or beverages.  See SGI, 122 F.3d at 1472.  Therefore, the Court's focus is further limited to whether or not Outer Circle's products are designed to contain, organize store, protect or carry food or beverages.

While not specifically framed as such, Outer Circle presents an argument based upon the subject merchandise's "principal use." "Principal use" is defined as the use "which exceeds any other single use" of the article.  Lenox Collections v. United States, 20 CIT 194, 196 (1996) (citation omitted).  To the extent that a classification is controlled by use other than actual use, HTSUS ARI 1(a) provides that:

> [A] tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use.

Plaintiff claims that "the primary purpose of the goods is to store and transport beverages."  Pl.'s Resp. at 16.  In support, Outer

Circle submits an affidavit and deposition from its founder and former president of the company, Thomas Melk.  See Pl.'s Brief, Exhibit 1 (Melk Affidavit), Exhibits 2, 3, 4, 6, 7 (Melk Deposition).  Melk's affidavit and deposition testimony focus on the factors a court considers in determining the principal use of a subject import.[11]  The Court finds it unnecessary to comment on the sufficiency of each individual factor except to note that each is predicated on the marriage of Outer Circle's containers to their respective bottles or jugs.  For example, Melk states that the "primary purpose of the subject merchandise is to help retain the cool temperature of the water or other beverage contained within it (in the bottle or jug) for the period of hours expected."  Pl.'s Brief, Exhibit 1 (Melk Affidavit ¶ 7).  It is fundamental in Customs cases that merchandise subject to classification "must be evaluated for tariff purposes in its condition as imported." Rollerblade, Inc., 112 F.3d at 487 (citing Simod Am. Corp. v. United States, 872 F.2d 1572, 1577 (Fed. Cir. 1989).  Thus, in order to produce uniformity in the imposition of duties, "the

---

[11] These factors are outlined in United States v. Carborundum Co., and include: (1) the general physical characteristics of the merchandise; (2) the expectation of the ultimate purchasers; (3) the channel of trade in which the merchandise moves; (4) the environment of the sale (i.e., the manner in which the merchandise is advertised and displayed); (5) the usage of the compared to the use if any, in the same manner as merchandise which defines the class, and adds to additional factors of consideration; (6) the economic practicality of so using the import; and (7) the recognition in the trade of this usage. 536 F.2d 373, 377 (CCPA 1976).

dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported." KMW Johnson, Inc. v. United States, 13 CIT 1079, 1082, 728 F. Supp 754, 755-56 (1989) (quoting Worthington v. Robbins, 139 U.S. 337, 341 (1891).

Presently, the subject containers are imported without the plastic bottles or jugs.  Far from being mere accoutrements, the bottles and jugs are basic to the accomplishment of the articles' purported design and purpose, which is the maintenance and storage of beverages at a desired temperature.  Thus, Plaintiff's argument that the subject imports are designed to contain and transport beverages is flawed.  The bottle wraps, as imported, cannot make this claim.  Their utility as insulated beverage containers arises only after the containers are mated to the requisite bottle or jug. Plaintiff claims that the wraps were designed to store and transport beverages and not the bottles which "merely act as vessels for the beverages."  Pl.'s Resp. at 9.  Outer Circle points to the articles examined in SGI and argues that the same analysis applies in the instant matter.  Because of the subject imports' similarity to the merchandise at issue in SGI, "they should also be classified under Heading 3924, HTSUS."  Pl.'s Brief at 3.  The Court disagrees.

First, neither the Court in SGI nor Dolly conducted an analysis of the tariff term "bottle cases."  While holding that the

scope of Heading 4202 does "not include containers that organize, store, protect, or carry food or beverages," SGI, 122 F.3d at 1472, this finding is inter-reliant with and contingent upon the principal use of the subject merchandise. The Court's determination, in SGI, was based on an examination of merchandise fully capable of storing food and/or beverages without further compilation. Outer Circle's products, on the other hand, require the additional assemblage of bottle or jug to achieve this end.

Second, in both SGI and Dolly the Court undertook an analysis based on the rule of ejusdem generis,[12] the fulcrum of which, once again, turned on the products' ability to store food or beverages. In both cases, the merchandise at issue was found to have retained the essential characteristics of being able to transport and store food and beverages in an insulated environment. The Court therefore concluded that the proper classification was under Heading 3924. Here, the Court has already determined that the subject merchandise, as imported, are incapable of storing food or beverages. Therefore, neither of these decisions is apposite for purposes of the case at bar. Regardless, an ejusdem generis analysis is ill-suited for the tariff term at issue here. The rule of ejusdem generis is a rule of statutory construction appropriate

---

[12] In classification cases, the rule of ejusdem generis requires that the subject merchandise must possess the same essential characteristics or purposes that unite the listed exemplars preceding the general term. See Totes, Inc. v. United States, 69 F.3d 495, 498 (Fed. Cir. 1995).

where the statutory language is unclear. It is "applicable whenever a doubt arises as to whether a given article not specifically named in the statute is to be placed in a class of which some of the individual subjects are named."[13] DRI Indus., Inc., 11 CIT at 101, 657 F. Supp. at 532 (1987) (quoting United States v. Damrak Trading Co., Inc., 43 CCPA 77, 79 (1956). It may not be resorted to when there is no doubt as to the meaning of a term. See John V. Carr & Son, Inc. v. United States, 77 Cust. Ct. 103, 108 (1976). The term "bottle cases" in this context is not a general word or phrase, and is specifically named. Thus, the statutory language is clear. As with all principles of statutory interpretation, "ejusdem generis is 'used only as an instrumentality for determining the legislative intent in cases where it is in doubt.'" Airflow Technology, Inc. v. United States, 31 CIT __, 483 F. Supp. 2d 1337, 1346 n.11 (2007) (citations omitted). Because Outer Circle has failed to establish any ambiguity in the statutory term "bottle cases," the principle of ejusdem generis is not implicated.

---

[13] Plaintiff's statement that its bottle and jug wraps are correctly classifiable under Heading 3924 "because that provision specifically describes them" is inconsistent with its reliance on the doctrine of ejusdem generis. Pl.'s Brief at 5.

### CONCLUSION

As the merchandise is <u>prima</u> <u>facie</u> classifiable under Heading 4202, HTSUS, Chapter 39, Note 2(ij) precludes classification of the imports under that chapter. Therefore, Plaintiff's proposed alternative classification under subheading 3924.10.50, HTSUS cannot stand.  In addition, the Court finds that the tariff term "bottle cases" is broad enough to encompass the subject containers. Accordingly, the Court finds that Customs properly classified the subject merchandise under Heading 4202.92.90, HTSUS.

Based on the foregoing, Outer Circle's motion for summary judgment is denied and Customs' motion for summary judgment is granted.  Judgment to be entered accordingly.


                                        /s/ Nicholas Tsoucalas
                                        NICHOLAS TSOUCALAS
                                        SENIOR JUDGE


Dated:     January 9, 2009
           New York, New York